IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND


| | | |
|---|---|---|
| **JEFF HULBERT, et al** | * | |
| **Plaintiffs** | * | |
| **v.** | * | **Case No. 1:18-cv-00461-GLR** |
| **SGT. BRIAN T. POPE, et al** | * | |
| **Defendants** | * | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

The Defendants, by and through their attorneys, submit the following points, authorities

and arguments in support of their Motion to Dismiss filed in the above-captioned proceeding.

### I.    INTRODUCTION

1.    This action is brought seeking injunctive relief and monetary damages based on

allegations of Plaintiffs that the Defendants violated their constitutional rights of free speech

under the First Amendment of the U.S. Constitution and Article 40 of the Declaration of Rights

of the Maryland Constitution and retaliation, as well as their rights against unreasonable search

and seizure and excessive force under the Fourth Amendment and Articles 24 and 26 of the

Declaration of Rights. The Plaintiffs also allege common law tort claims of false arrest and false

imprisonment. The Defendants are being sued in their official and individual capacities. The

Complaint should be dismissed because the State of Maryland, through the Defendants in their

official capacities, cannot be sued in Federal Court under the Eleventh Amendment to the U.S.

Constitution, the Defendants in their individual capacities are entitled to qualified immunity in

the federal claims and immunity under Maryland law for the State claims. The Complaint otherwise fails to allege specific facts upon which relief can be granted.

2.      The Plaintiffs Jeff Hulbert, a citizen of Maryland, and Kevin Hulbert, a citizen of Virginia, are brothers who are active in the debate over gun-control and issues related to the Second Amendment of the United States Constitution. The Plaintiff, Maryland Shall Issue, Inc. ("MSI"), is a non-profit membership organization incorporated under the laws of Maryland, for the purpose, as stated in the Complaint, for the preservation and advancement of gun-owners' rights in the State of Maryland.

3.      The Defendants are sued in their official and individual capacities. Both are members of the Maryland Capitol Police, a division of the Maryland Department of General Services (hereinafter referred to as "MCP"); Sergeant Brian Pope ("Pope") is a non-commissioned officer in MCP with the regular law enforcement responsibilities of a police officer; Colonel Michael Wilson ("Wilson") is the commander and head of unit of the entire MCP division.

## II.      FACTUAL ALLEGATIONS

This case arises from an incident in which the Plaintiffs held an unpermitted and unscheduled demonstration on the sidewalk in front of Lawyers' Mall in Annapolis, Maryland on February 5, 2018 in the evening approximately around 6:00 PM.[1]

The central allegations that form the basis of this suit are as follows:

(a)      The Plaintiffs and the individuals accompanying them had gathered on the sidewalk in front of Lawyers' Mall in Annapolis, Maryland on February 5, 2018 starting

---

[1] Anyone planning to hold a demonstration or rally on the Capitol Building grounds are required to obtain a permit from the MCP and conduct it on Lawyers' Mall pursuant COMAR 04.05.02.02.

2

approximately at 6:00 PM to protest firearm-related laws and policies that they opposed (See ECF 1 (Complaint) at ¶¶ 1, 2, 20, 21, 22, 23, 24 and 25).

      (b)     That the Plaintiffs and the other demonstrators stood on the sidewalk with signs (See ECF 1 (Complaint) at ¶¶ 30 and 31).

      (c)     That Sergeant Pope first had advised Kevin Hulbert that the demonstration had to be in Lawyers Mall and about an hour later ordered the Plaintiffs and the other individuals accompanying them to move from the sidewalk into Lawyers' Mall (See ECF 1 (Complaint) at ¶¶ 27, 28, 29 and 32).

      (d)     That Jeff Hulbert "was the sole sign-holder who chose to stay behind in civil and respectful disobedience" of the order (See ECF 1 (Complaint) at ¶ 33).

      (e)     That Kevin Hulbert was at the same location videotaping the scene (See ECF 1 (Complaint) at ¶ 35)

      (f)     That additional officers arrived on the scene. (See ECF 1 (Complaint) at ¶ 34)

      (g)     That Sergeant Pope placed Jeff Hulbert and Kevin Hulbert under arrest for failure to obey a lawful order (¶See ECF 1 (Complaint) at ¶ 33, 35 and 38) and both were placed in handcuffs and taken to the Annapolis Police headquarters where the formal citations were given to them (See ECF 1 (Complaint) at ¶¶ 36, 37 and 38).

      (h)     That the initial charges (failure to obey a lawful to prevent a disturbance of the public peace) violated the Plaintiffs First Amendment right of freedom of speech and assembly as well as content-based retaliation for political messages contained on the signs being carried by the demonstrators (See ECF 1 (Complaint) at ¶¶ 43 and 44)

(i)      That Chief Wilson retaliated against the Plaintiffs the following day for talking with the media about the incident by serving two additional citations (See ECF 1 (Complaint) at ¶¶ 45, 46, 47, 48, 49, 50, 51, 52 and 53).

(j)      That the two additional citations charging the Plaintiffs for refusal to leave Lawyers' Mall which by doing so was acting in a manner disruptive of and disturbing the conduct of normal business in violation of §6-409(b) of the Criminal Law Article, Annotated Code of Maryland and Code of Maryland Regulations 04.04.01.03 (See ECF 1 (Complaint) at ¶ 54).

It is the Defendants position that the Plaintiffs fail to state a claim upon which relief can be granted in various Counts of the Complaint, as discussed below.


### III.      STANDARD OF REVIEW

A complaint must demonstrate that the plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When a complaint fails to state a claim upon which relief may be granted, dismissal is appropriate.  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss for failure to state a claim, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it contains factual content that allows the court to draw the reasonable inference that the defendants are liable for the alleged misconduct. *Id.*  In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of the plaintiff. *Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616, 621-22 (D. Md. 2017).  Bald allegations and speculation, however, are insufficient to state a claim, and the Court is not required to accept legal conclusions drawn from the facts. *Id.*

4

## IV.   ARGUMENT

## A.   DEFENDANTS CANNOT BE SUED IN THEIR OFFICIAL CAPACITIES BECAUSE THEY ARE STATE ACTORS AND THE STATE IS NOT A "PERSON" UNDER §1983 AND THE STATE ENJOYS ELEVENTH AMENDMENT IMMUNITY.

State officials cannot be sued in their official capacities because they are State actors and the State cannot be sued under the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989)  The petitioner in *Wills* filed a §1983 claim against the Michigan State Police and the Director of State Police in state court because he had been denied a promotion.  The Supreme Court of Michigan ruled that the defendants in that case were not "persons" under §1983.  On certiorari from the state supreme court decision, the Supreme Court, in holding that neither the agency nor the director could be sued in their official capacities in a §1983 case, explained as follows:

"Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the state itself.... We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device. We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983." *Id.* at U.S. 71 (internal citations omitted).

Here, the Defendants are both employees of the MCP and as such are "state officials" when acting in their official capacity.  The Complaint has been brought against both Defendants in both their official capacities and their individual capacities. To the extent

5

that the suit has been brought under 42 U.S.C. §1983, the claims against the Defendants in their official capacities are impermissible and should be dismissed.

Further, a federal court award of damages against a state, a state agency or an official sued in an official capacity is barred by the Eleventh Amendment. *Edelman v Jordan,* 415 U.S. 651 (1974). However, the Eleventh Amendment does not bar prospective relief against a state official to prevent future federal constitutional or statutory violations. *In re Young,* 209 U.S. 123 (1908). Nevertheless, the Plaintiffs seek in their §1983 claims to a large measure monetary awards against the Defendants in their official capacities which are clearly impermissible under the Eleventh Amendment. To the extent of those claims against the Defendants in their official capacities for monetary awards, they must be dismissed.

## B.      DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' (citation omitted). The privilege is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' (citation omitted). As a result, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Saucier v. Katz,* 533 U.S. 194, at 200-201 (2001) (emphasis in original). The resolution of the issue of qualified immunity is of utmost importance in the early stages of litigation. For this reason, the Defendants seek qualified immunity in this preliminary motion.

Plaintiffs' personal-capacity claims against Chief Wilson and Officer Pope are barred by qualified immunity. Government officials sued under 42 U.S.C. § 1983 are immune from suit

unless their conduct fails to pass a two-prong test, namely, (1) it violates a constitutional right, *and* (2) the unlawfulness of their conduct was clearly established at the time of the violation. *District of Columbia v. Wesby*, ___U.S.___, 138 S. Ct. 577, 589 (decided Jan. 22, 2018), See also, *Pearson v Callahan,* 555 U.S. 223 (2009);. To be clearly established for qualified-immunity purposes, a rule must be sufficiently clear that "*every* reasonable official would understand that what he is doing is unlawful." *Wesby. supra* (emphasis added; internal quotation marks omitted). The existing law must place the unconstitutionality of the official "beyond debate." *Id.* (internal quotation marks omitted). The clearly-established standard is "demanding," and protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (emphasis added).

Whether or not a rule is clearly established is determined by reference to existing law at the time of an alleged violation. A legal principle is not clearly established unless it has "a sufficiently clear foundation in then-existing precedent" or is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (internal quotation marks omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that *every* reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590 (emphasis added). Moreover, a legal principle must clearly apply under the specific factual circumstances of a given case. "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id.* (internal quotation marks omitted).

In the First Amendment context, a legal principle is not "clearly established"—even if a court ultimately agrees with it—if a government official could reasonably have a different view of the law: "It does not matter" whether a plaintiff actually possesses a right he claims to

7

possess; "[w]hat matters is that reasonable government officials could . . . understand the law very differently." *Occupy Nashville v. Haslam*, 769 F.3d 434, 445 (6th Cir. 2014).

Plaintiffs have failed to state a claim as to Chief Wilson and Officer Pope individually because they fail to allege, beyond bald assertion, facts that show (1) how being ordered to move back from the sidewalk into Lawyers' Mall to continue their demonstration was a violation of their First Amendment rights of free speech and assembly; (2) how the actions of the Defendants were outside the realm of settled authority when the orders were given, the arrests were made and the citations were given to Jeff and Kevin Hulbert.

The Mall is part of the General Assembly Building complex and is owned by the Department of General Services ("DGS"). The MCP is a part of DGS which is charged with the responsibility of protecting the grounds and buildings. See State Fin. & Proc. Art., §§ 4-601, 4-604 and 4-605, Annotated Code of Maryland. This is important because the Defendants were acting in accordance with statutory law and not upon their own authority.

When the Complaint is carefully read, there is no factual allegation that the Plaintiffs and the accompanying demonstrators were deprived of their First Amendment Rights of free speech. The allegations clearly show that Officer Pope had ordered the demonstrators to move back from the sidewalk in front of Lawyers' Mall into the Mall area. In reading paragraphs 27, 28, 29 and 32 together, it is clear that Officer Pope ordered Kevin Hulbert, Jeff Hulbert and those accompanying them to move back into the area of Lawyers' Mall. The physical layout and location of the sidewalk in relation to the Mall as described in Paragraph 28 of the Complaint makes clear that the demonstrators were being ordered to move a distance of a matter of feet. Contrary to the allegation that the police "ordered them away" in paragraph 1, it is clear that Officer Pope had first told Kevin Hulbert and later Jeff Hulbert and the other demonstrators with

8

him to move back from the sidewalk into Lawyers' Mall. It is clear from paragraph 32 that all

the demonstrators heard the order because the other demonstrators, besides the Hulbert brothers,

began to move toward Lawyers' Mall.  Whether the demonstrators had a permit to go into

Lawyers' Mall is irrelevant because Officer Pope was clearly giving them permission by his

order to go inside the Mall area.  From there, the Plaintiffs could continue their demonstration

within feet from where they were located previously, and in view of pedestrians and oncoming

traffic. Consequently, the Plaintiff free speech rights were not violated thus clearing the first

prong of entitlement to qualified immunity enunciated in *Wesby*.

Assuming *arguendo* that the order and arrest violated a constitutional right, the

Defendants would be entitled to qualified immunity unless the unlawfulness of their actions were

clearly established at the time.  Here, Officer Pope was confronted by a group of demonstrators

who were carrying on a demonstration on the sidewalk before the General Assembly Building in

front of Lawyers' Mall.  Officer Pope, as an officer of MCP, is sworn to enforce COMAR 04.05.

01.02 as well as COMAR 04.05.03,  regarding the proper use of sidewalks on DGS owned

property[2] These regulations have not been challenged on constitutional grounds  and, therefore,

---

[2]  COMAR 04.05.01.02 provides as follows:

A. The property is closed to the public after regular business hours.

B. Property or portions of it may be closed to the public during regular business hours in emergency situations:

(1) Necessary to the orderly conduct of State business;

(2) For safety reasons; or

(3) For security reasons.

C. After consulting with the Secretary of General Services, or in the Secretary's absence, the Deputy Secretary, emergency situations may be declared by the following individuals, or by their authorized designee:

(1) Superintendent of Baltimore Public Buildings and Grounds;

(2) Superintendent of Annapolis Public Buildings and Grounds; or the

(3) Manager of a multiservice center.

would lead a public officer to reasonably believe that the enforcement of them would not violate

a constitutional right. Taking into consideration the specific situation where Officer Pope found

himself, there was no clearly established authority holding that a public official violates a

demonstrator's First Amendment rights by ordering that person to move within a few feet from

where the demonstrator was originally standing.  See *Ross v. Early,* 746 F. 3d 546 (4th Cir. 2014)

where a police officer was found to be entitled to qualified immunity from suit for his arrest of a

protester on a public sidewalk after failing to obey an order to move to designated area of

sidewalk during a public event.  The officer, in arresting the protester, was enforcing a City

ordinance which provided designated areas for exercise of speech rights that would free the flow

of pedestrian traffic during events at the Baltimore Arena. Since the ordinance had not been

previously challenged, the court said that the officer could reasonably believe that he was not

violating a settled constitutional right.  In this case, Officer Pope in enforcing DGS regulations,

could reasonably believe that his order in light of the circumstances would not violate the

---

D. During and after business hours or during declared emergency situations, an individual working, visiting, conducting business, or otherwise lawfully in, on, or about State property will be required to display identification documents upon request. During and after business hours or during declared emergencies, an individual may be arrested if the individual:

(1) Either:

(a) Is on the property with no apparent lawful business to pursue; or

(b) Fails to display identification documents upon request; and

(2) Refuses to leave or fails to leave after being asked to leave by an authorized employee of the Department of General Services.

COMAR 04.05.01.03 provides in pertinent part:

A. An individual shall be subject to arrest if the individual:

(5) Obstructs:

(b) Walks,

The Complaint does not challenge the constitutionality of these regulations.

demonstrators' First Amendment rights.  Consequently, Officer Pope would be entitled to qualified immunity under Counts I and II.

The Complaint does not allege that Chief Wilson took part in the ordering of the demonstrators back from the sidewalk into Lawyers' Mall.  Because the doctrine of *respondeat superior* does not apply in actions brought under § 1983, *see Barnes v. Wilson*, 110 F. Supp. 3d 624, 630 (D. Md. 2015), Plaintiffs' failure to allege any conduct by Chief Wilson is a basis for dismissing the individual-capacity claims against him outright or entitle him to qualified immunity in Counts I and II.

The allegations of Count III, that the Defendants Wilson and Pope cited the Hulbert brothers under separate statute and regulation were in retaliation for the brothers speaking to the media are without merit. In the First Amendment retaliatory arrest context, a governmental official is immune from a § 1983 suit if his conduct passes the same tests enunciated in *Wesby, supra.*  See *McCoy v. City of Columbia,* 929 F. 2d 541, 562 (4th Cir. 2013).  In paragraphs 85 and 86 of the Complaint, the Plaintiffs allege that Wilson and Pope without probable cause caused additional charges to be cited against them. However, the citations stem from the same incident that transpired the night before when Officer Pope made the arrests and issued the original citations to the Hulbert brothers. The citations on their face show the same facts on the same date as the original citations (ie: failing to obey the order to move from the sidewalk to inside Lawyers' Mall) which is the probable cause for their issuance the following day. See copies of the citations signed by the Hulbert brothers on February 5, 2018, referenced in the Complaint, attached hereto and made a part hereof as Exhibits A. 1 and 2, and copies of citations signed by the Hulbert brothers the following day attached hereto and made a part hereof as Exhibits B 1 through 4.   The allegations in Paragraph 38 infer that the citations signed by the Hulberts on

11

February 5th were incomplete in that it merely cited a CJIS code. The facts given however were materially the same between the citations signed by the Hulbert brothers on February 5th and the ones signed by them the following day. It is apparent that the second set of citations were to correct the incompleteness of the first set based on the same arrest. The service of the second set of citations was a necessary step to properly cite the Plaintiffs for their conduct the evening before. As argued above, the order and arrest which led to the first set of citations were done in the reasonable belief that it did not violate an established rule of law. The service of the corrected second set of citations was an extension of enforcing the regulations previously done the night before.  There was no settled authority to lead either Defendant to believe that serving the corrected citations would violate a constitutional right.  Therefore, both Defendants are entitled to qualified immunity as to Count III and the same Count should be dismissed.

Count IV alleges Fourth Amendment unconstitutional search and seizure.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' Because arrests are 'seizures' of 'persons', they must be reasonable under the circumstances. [citations omitted] A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence" *Wesby,* at S. Ct. 585 and 586 [quotes in original]. To determine whether an officer had probable cause to make an arrest, "'we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause'" *Id.* (internal quotes omitted).  "Because probable cause 'deals with probabilities and depends on the totality of the circumstances, it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat

12

set of legal rules.' It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity' Probable cause 'is not a high bar.'" *Id.* (citations omitted)

In the Fourth Amendment context, the same standards for qualified immunity apply as in the First Amendment context, ie: unless an arrest (1) violates a constitutional right, *and* (2) the unlawfulness of the officer's conduct was clearly established at the time of the violation. *Id.* at S. Ct. 589. As was argued above in the First Amendment context, precedent must be clearly established so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply and the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

It has already been argued above that Officer Pope had warned and ordered the Plaintiffs and the other demonstrators with them not to demonstrate on the sidewalk, but to move back a few feet inside of Lawyers' Mall and continue with their demonstration there. This order was to enforce the COMAR regulations cited above regarding the use of sidewalks. In so doing, the Plaintiffs would not in any way be deprived from exercising their rights of free speech. The other demonstrators understood the order and began to move back into Lawyers' Mall while the Hulbert brothers defied the order after it had been given. Officer Pope, while present at the scene, saw that the Hulbert brothers were willfully defying his order to move their demonstration into Lawyers' Mall. Officer Pope's witnessing the brothers' defiance of his order constituted probable cause that led to the arrest. Therefore, the arrests made of the Hulbert brothers were a valid warrantless arrest or "seizure" of their persons based upon probable cause. Thus, Officer Pope's arrest did not constitute and unlawful Fourth Amendment search and seizure and his reasons for making the arrest did not violate any established principle of law at the time. He would therefore be entitled to qualified immunity under *Wesby*.

13

For these reasons, Officer Pope would be entitled to qualified immunity in Count IV.

Further, the Complaint fails to allege that Chief Wilson was present at the time of the arrests on February 5th or that he would be liable as a supervisor. The Fourth Circuit has set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff , *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), cert. den. 513 U.S. 813, 814 (1994). From what is inferred from the Complaint, Chief Wilson was not aware of the arrest, nor were there any allegations that Chief Wilson would have known that Officer Pope would make arrests without probable cause. Therefore, Chief Wilson would not have plausible liability.

The Complaint does not make a clear allegation that the issuance of citations on February 6th constituted an arrest, but to the extent that it infers that an unconstitutional arrest was also made, such allegation would fail because the mere issuance of a citation by either Officer Pope or Chief Wilson  without any attendant restraint on the individual's freedom is not a seizure under the Fourth Amendment. *Martinez v Carr*, 479 F.3d 1292 (10th Cir. 2007); *DiBella v. Borough of Beachwood,* 407 F.3d 599 (3d Cir. 2005). Therefore, Chief Wilson is entitled to qualified immunity to Counts IV and V.

Count V alleges Fourth Amendment unconstitutional excessive force.

The starting point for any constitutional claim of excessive force is the Supreme Court's opinion in *Graham v. Connor*, 490 U.S. 386, 396 (1989). The *Graham* Court held that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. The test for reasonableness is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* The Maryland Court of Appeals adopted the *Graham* reasonableness standard for evaluating excessive force claims brought pursuant to the Maryland Declaration of rights. *See Richardson v. McGriff*, 361 Md. 437, 452-53 (2000); *see also Randall v. Peaco,* 175 Md. App. 320, 329 (2007) (applying *Graham* and *Richardson* reasonableness standard to a summary judgment determination). Therefore, both the § 1983 Fourth Amendment claim (Count V) and the Maryland Declaration of Rights claims (Counts VII and VIII) can be analyzed pursuant to the *Graham* reasonableness standard. .[3]

The Supreme Court has recognized that the right to make an arrest carries with it the right to use the force necessary to make the arrest. In *Graham*, the Court noted that "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The Supreme Court explained the reasoning behind this as follows:

> Every arrest must be presumed to present a risk of danger to the arresting
>
> officer. There is no way for an officer to predict reliably how a particular subject will

---

[3] The standard for a 14th Amendment claim imposes a higher burden on Plaintiff, as discussed below. But given that Plaintiff fails to assert a plausible claim under the 4th Amendment, the Defendants are entitled to dismissal of the 14th Amendment claim as well.

react to arrest or the degree of the potential danger. Moreover, the possibility that an

arrested person will attempt to escape if not properly supervised is obvious.

*Washington v. Chrisman*, 455 U.S. 1, 7 (1982).

Handcuffing is certainly part of the force reasonably used to effect a lawful arrest and the

law is clear that handcuffing suspects who have been lawfully arrested rarely amounts to excessive

force. The Fourth Circuit has said that "a standard procedure such as handcuffing would rarely

constitute excessive force where the officers were justified ... in effecting the underlying arrest."

*Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002). In this case, Officer Pope found himself

confronted with several demonstrators at the scene. He was also confronted with the two Hulbert

brothers willfully defying his order to move back a few feet into Lawyers' Mall. This defiance

could be reasonably interpreted by Officer Pope as an indicator that the situation could become

volatile. Fortunately, it did not turn out to be volatile, but Officer Pope at the moment of arrest

could not be certain what the next minutes would bring. Under this set of circumstances, it can be

seen that Officer Pope's use of handcuffs was reasonable. The Plaintiffs did not allege any injury

to themselves that would indicate excessive use of force.

Where there is no allegation of physical injury, the handcuffing of an individual incident

to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the

Fourth Amendment. *Neague v. Cynkar*, 258 F.3d 504 (6th Cir 2001). The Plaintiffs allege that

they were both "placed painfully in tight handcuffs and searched before being taken to the

Annapolis City Police precinct", but nowhere is there any allegation of any physical injury

inflicted upon them. Since physical injuries are not so much as alleged in the Complaint, it is

insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment or

Article 26 of the Declaration of Rights of the Maryland Constitution. Having not even stated a

16

claim upon which relief can be granted in Count V there is no reason to analyze whether the Defendants are entitled to qualified immunity.  Even so, Officer Pope used only reasonable force to arrest the Hulbert brothers which inflicted no injury, thus not violating the Hulbert brothers' Fourth Amendment right against the use of excessive force. Chief Wilson is not even alleged to have taken part in the arrest.  Therefore, Counts V and VIII should be dismissed outright as to both Defendants.

## C.  CHIEF WILSON AND OFFICER POPE ARE ENTITLED TO STATUTORY STATE PERSONNEL IMMUNITY FOR STATE LAW CLAIMS, AND THE STATE HAS NOT WAIVED ITS SOVEREIGN IMMUNITY FOR STATE LAW CLAIMS BROUGHT IN FEDERAL COURT.

When an action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are the nominal defendants. *Edelman v Jordan, supra,* at U.S. 663.  The Plaintiffs' State law rights in Counts VI through X also seek to a large extent monetary awards against the Defendants in their official capacities that effectively constitutes a suit against the State which is impermissible under the Eleventh Amendment. To the extent of those claims against the Defendants in their official capacities for are monetary awards, they must be dismissed on Eleventh Amendment grounds.

The Defendants' entitlement to immunity in the State constitutional and tort claims come under a Maryland Tort Claims Act analysis.

Under the Maryland Tort Claims Act (Title 12, subtitle 1 of the State Government Article, Annotated Code of Maryland), state personnel shall have the immunity from liability described under §5-522(b) of the Courts and Judicial Proceedings Article. *State Gov. §12-105.*

Section 5-522(b) of Courts and Judicial Proceedings Article provides:

"State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver."

The Court of Appeals of Maryland has held that the immunity under the Maryland Tort Claims Act, if otherwise applicable, encompasses constitutional torts and intentional torts. *Lee v. Cline,* 384 Md. 245 (2004). "The immunity under the Maryland Tort Claims Act, however, is not inherently related to negligence actions in contrast to intentional tort actions. The purpose of the Tort Claims Act's immunity is not simply to protect judgmental decisions by officials. Instead, the purpose of the Tort Claims Act's immunity is to insulate state employees generally from tort liability if their actions are within the scope of employment and without malice or gross negligence. This broader purpose fully applies to non-malicious intentional torts and constitutional torts." *Id.* at Md. 261.

Thus, the question is whether the alleged violations of the Defendants were acts done within the scope of their public duties and were done without malice or gross negligence.

On February 5th, Officer Pope was working on duty as a sworn officer of MCP. As explained above, part of his duties as an officer is to enforce DGS regulations governing the use and security of grounds and buildings in its jurisdiction. COMAR 04.05. 01.02 as well as COMAR 04.05.03 are among those regulations which calls for the walks and areas around the building not be obstructed. As argued above, Officer Pope encountered the Plaintiffs and the

other demonstrators in the sidewalk area close to the street and had ordered them to move a few feet away into Lawyers' Mall.  The order was made to enforce the COMAR regulations above cited and thus was a lawful order. The order did not require the group to cease their demonstration or disrupt their exercise of free speech.  Actual malice in Maryland law normally refers 'to conduct characterized by evil or wrong motive, intent to injure, knowing or deliberate wrongdoing, ill-will or fraud…" *Id.* at Md. 268.  Officer Pope, from a careful reading of the allegations of the Complaint clearly did not interfere with the Plaintiffs' free-speech rights. The allegations were that Officer Pope ordered the demonstrators to move a few feet and did not order them to disperse.  From the conduct of Officer Pope, it cannot be inferred that Chief Wilson had malice to disperse the demonstration.  For the same reasons, it is difficult to find that either Defendants had been grossly negligent towards the Plaintiffs' free speech rights when those speech rights were not infringed upon.  Thus, both Defendants should be entitled to immunity in Count VI.

If Officer Pope did not act out of malice or operated from gross negligence by violating the Plaintiffs' free speech rights, then it would follow that the arrest and handcuffing did not flow from malice or gross negligence either. As seen, Officer Pope did not give the orders to the group to move into Lawyers' Mall out of malice or gross negligence and the order was lawfully given. The Hulbert brothers' willful failure to obey the order required the next step of arrest. The fact that an arrest was made and the arrestee is handcuffed is not in itself a sign of malice. Further, the Plaintiffs were not injured while in handcuffs which would give further indication that Officer Pope did not act with malice or with gross negligence.  Therefore, Officer Pope would be entitled to immunity in Counts VII and VIII.

The Complaint does not allege that Chief Wilson took part in the ordering of the demonstrators back from the sidewalk into Lawyers' Mall or the making of the arrest. Consequently, he would not be liable for the Article 24 and 26 claims in Counts VII and VIII.

The Plaintiffs claim that they were falsely arrested and falsely imprisoned by the Defendants under State law concepts.  In *Prince George's County v. Blue* 206 Md. App. 608 (2012), aff'd in *Blue v. Prince George's County,* 434 Md. 681 (2013), the court held that if probable cause existed for an arrest, then legal justification for the arrest and imprisonment existed so as to preclude claims for false arrest and false imprisonment.  In *Blue,* the plaintiff worked at a nightclub and carried a firearm without a license.  He went outside of the nightclub to investigate a shooting on the parking lot.  The police, when they arrived, found that he had the firearm on his person and ultimately arrested him. The plaintiff filed an action against the county claiming a violation of his rights under Article 24 of the Maryland Declaration of Rights as well as counts for false arrest and false imprisonment.  The jury found for the Plaintiff on all counts and the county moved for judgment *n.o.v.* which motion was denied.  The county appealed and the Court of Special Appeals in reversing the trial court said that the legal justification to arrest precludes claims for false arrest and false imprisonment.  In that it has already been demonstrated that Officer Pope had justification for the arrests, Counts IX and X should be dismissed as to him.

With that said, even if Counts IX and X are not dismissed, for the same reasons discussed above regarding immunity to Counts VII and VIII, there is no showing of malice or gross negligence as to Counts IX and X so that Officer Pope would be entitled to immunity under the Maryland Tort Claims Act.  The allegations fail to allege sufficient facts to show how Chief

Wilson took part in the false arrest and false imprisonment of the Plaintiffs and therefore Counts IX and X should be dismissed as to him.

For the foregoing reasons, all Counts should be dismissed outright or dismissed as to both Defendants because they are entitled to qualified immunity in the federal claims and immunity under the Maryland law in the State claims.

Respectfully submitted,

BRIAN E. FROSH, Attorney General of Maryland

_____ /s/ _____
Robert A. McFarland, Assistant Attorney General, Department of General Services
Federal Bar No. 10095
300 W. Preston Street, Room 608
Baltimore, MD 21201
(410) 767-4514
robert.mcfarland@maryland.gov

# EXHIBIT A.1

## (Citation to Kevin Hulbert Signed Feb. 5, 2018)



UNIFORM CRIMINAL CITATION
State of Maryland vs.

1720034066643

Defendant's (Last) Name: Hulbert   First: James   Middle: James

Current Address in Full: PO Box 41

City: Dck Hall   County:   State: MD   Zip Code: 23416

DOB: 10-7-53   Height: 5'10   Weight: 175   Sex: M   Race: W   Ethnicity:   Hair: Grey   Eyes: Blue

Telephone No.
Day: 757 894 6359   Night:

Related Citations

Arrest Number (if applicable): 172001069260   ☐ Check if Fingerprinted

It is formally charged that the above named person on 5 February, 2018
at 7:30 P.M. at Lawyer's Mall - Public sidewalk
(Location)                          City/County, Maryland did
unlawfully fail to obey a reasonable and
lawful order of a law enforcement officer
riot + riot to prevent a disturbance
to the public peace

In violation of: ☑Md. Ann. Code ☐COMAR/Agency Code ☐Common Law of Md. ☐Ordinance
☐Public Local Law                                                   Section: 2-203
Document/Article

Penalty: $500   60 Days   CJIS Code

☐ ON
☐ WHEN REQUIRED BY THE COURT   Date

TO ANSWER THE ABOVE CHARGE LODGED AGAINST YOU:
YOU ARE HEREBY SUMMONED AND COMMANDED TO APPEAR FOR TRIAL IN THE DISTRICT
COURT OF MARYLAND AND FOR  Annapolis  (CITY/COUNTY) LOCATED AT
AT                                                          , MARYLAND,

YOUR FAILURE TO OBEY THIS CITATION MAY RESULT IN THE ISSUANCE
OF A WARRANT FOR YOUR ARREST.

To request a foreign language interpreter or a reasonable accommodation under the
Americans with Disabilities Act, please contact the court immediately.

I sign my name as a receipt of a copy of this citation and not as an admission of guilt. I hereby submit
to the jurisdiction of the Court.

X Defendant's Signature
I solemnly affirm under the penalties of perjury that the contents of the foregoing citation are true to the
best of my knowledge, information, and belief.
Issuing Peace
Officer's
Signature
DC-CR-045 (Rev. 11/2017)

Date   ID/Agency   Sub-Agency   ID No.

EXHIBIT A.2

(Citation to Jeff Hulbert Signed Feb. 5, 2018)

UNIFORM CRIMINAL CITATION
State of Maryland vs.

17 2003 40 6654

Defendant's (Last) Name: Hulbert    First: Jeff    Middle: William

Current Address in Full: PO Box 137301 Tackle Circle

City: Chester    County:    State: MD    Zip Code: 21619

DOB: 10-7-63    Height: 5'10    Weight: 200    Sex: M    Race: W    Ethnicity: N/A    Hair: Grey    Eyes: Blue

Related Citations: 172003 406643

Telephone No.
Day: N/A    Night:

Arrest Number (if applicable): _____    ☐ Check if Fingerprinted

It is formally charged that the above named person on 5 February 2013 Year

at 7:30 P.M. at Lawyer's Mall, Public Sidewalk
(Location)    City/County, Maryland did

willfully fail to obey a reasonable and
lawful order of a law enforcement officer
to wit, refuse to the extent a disturbance
to the public peace

In violation of: ☑ Md. Ann. Code   ☐ Public Local Law   ☐ COMAR/Agency Code   ☐ Common Law of Md.   ☐ Ordinance

Document/Article _____    Section _____    CJIS Code: 2.0015

Penalty: $500    60 days

TO ANSWER THE ABOVE CHARGE LODGED AGAINST YOU:
YOU ARE HEREBY SUMMONED AND COMMANDED TO APPEAR FOR TRIAL IN THE DISTRICT
COURT OF MARYLAND FOR Annapolis    (CITY/COUNTY) LOCATED AT

_____ MARYLAND,

☐ ON _____    AT _____
☐ WHEN REQUIRED BY THE COURT.    Date

YOUR FAILURE TO OBEY THIS CITATION MAY RESULT IN THE ISSUANCE
OF A WARRANT FOR YOUR ARREST.

To request a foreign language interpreter or a reasonable accommodation under the
Americans with Disabilities Act, please contact the court immediately.

I sign my name as a receipt of a copy of this citation and not as an admission of guilt. I hereby submit
to the jurisdiction of the Court.

X _____ Defendant's Signature

I solemnly affirm under the penalties of perjury that the contents of the foregoing citation are true to the
best of my knowledge, information, and belief.

Issuing Peace
Officer's
Signature: B. Kolb    Date: 5/22/13    MCP    0001    ID No. 0180

DC-CR-046 (Rev. 10/24/17)    Agency    Sub-Agency

EXHIBIT B.1

(Citation to Kevin Hulbert Signed Feb. 6, 2018

CR 6-409(b))

**UNIFORM CRIMINAL CITATION**
State of Maryland vs.

1220010692971

| | | |
|---|---|---|
| Defendant's (Last) Name | First | Middle |
| Hulbert | Kevin | James |

Current Address in Full
PO Box 41

| City | State | Zip Code |
|---|---|---|
| Oak Hall | VA | 23416 |

| DOB | Height | Weight | Sex | Race | Hair | Eyes |
|---|---|---|---|---|---|---|
| 10-7-53 | 5'10 | 175 | M | W | Gray | Blue |

Related Citations
1030010692982

Telephone No.
Day: (757) 894-5639   Night:

It is formally charged that the above named person on 5/15/2014 201.8
at 7:30 p.m. M at Lawyer's Mall, S. Charles Public
(Location) City/County, Maryland

did refuse to leave Lawyer's Mall, a property of
State of Maryland, a public agency, during regular business
hours, upon being requested to do so by Sgt. B.R. and
when the defendant was acting in a manner
disruptive of and disturbing to the conduct of
normal business.

in violation of: ☑ Md. Ann. Code  ☐ COMAR / Agency Code  ☐ Common Law of Md.  ☐ Ordinance
☐ Public Local Law

| Document/Article | Section | CJIS Code |
|---|---|---|
| CR6-409 (b) | | 1-0344 |

Penalty: $500, 1 G, or/and 1 yr.

TO ANSWER THE ABOVE CHARGE LODGED AGAINST YOU:
YOU ARE HEREBY SUMMONED AND COMMANDED TO APPEAR FOR TRIAL IN THE DISTRICT COURT
OF MARYLAND FOR: ANNE ARUNDEL (CITY/COUNTY) LOCATED AT, 5 Pa
MARYLAND

☐ ON _____ Date _____ AT _____ M.
☑ WHEN NOTIFIED BY THE COURT.

**YOUR FAILURE TO OBEY THIS CITATION MAY RESULT IN THE ISSUANCE OF A WARRANT FOR YOUR ARREST.**

To request a foreign language interpreter or a reasonable accommodation under the Americans with Disabilities Act, please contact the court immediately.

X _Kevin Hulbert_
Defendant's Signature
I sign my name as a receipt of a copy of this citation and not as an admission of guilt. I hereby submit to the jurisdiction of the Court and agree to appear when notified.

| Date | Agency | Sub-Agency | ID No. |
|---|---|---|---|
| 6 Feb 19 | MCP | 0082 | 8/60 |

X _____
Officer's Signature
I solemnly affirm under the penalties of perjury that the contents of the foregoing citation are true to the best of my knowledge, information, and belief.

DC/CR 45 (Rev. 5/2002) Print Date (4/7/2012)

COURT COPY

EXHIBIT B.2

(Citation to Kevin Hulbert Signed Feb. 6, 2018

COMAR 04.05.01.03)

UNIFORM CRIMINAL CITATION
State of Maryland vs.

122001065304

Defendant's (Last) Name: Hulbert
First: Kevin
Middle: James

Current Address in Full: PO BOX 41

City: Oak Hall
State: VA
Zip Code: 23416

DOB: 10-2-53
Height: 5'10
Weight: 175
Sex: M
Race: W
Hair: Grey
Eyes: Blue

Related Citations:

Telephone No.
Day: 757-824-5634
Night:

172003406654

It is formally charged that the above named person on: 5 February y 2018
at: 7:20 p.m. at Lawyers Mall – Side walk – Public
_(Location)_  City/County, Maryland

did Resident's of disturbs the peaceful Public
from obtaining services provided on the
property. Of obstructs. walks

in violation of:  ☐ Md. Ann. Code  ☑ COMAR / Agency Code  ☐ Common Law of Md.  ☐ Ordinance
☐ Public Local Law

Document/Article: 04.05.01.03
Penalty: his gathering could not be fined of public safety

Section                CJIS Code

TO ANSWER THE ABOVE CHARGE LODGED AGAINST YOU:
YOU ARE HEREBY SUMMONED AND COMMANDED TO APPEAR FOR TRIAL IN THE DISTRICT COURT
OF MARYLAND FOR _Anne A.A.C.._ (CITY/COUNTY) LOCATED AT _530
Taylor Ave_ _____ MARYLAND
AT _____ M.

☐ ON _____ Date
☑ WHEN NOTIFIED BY THE COURT.

YOUR FAILURE TO OBEY THIS CITATION MAY RESULT IN THE ISSUANCE
OF A WARRANT FOR YOUR ARREST.

To request a foreign language interpreter or a reasonable accommodation under
the Americans with Disabilities Act, please contact the court immediately.

I sign my name as a receipt of a copy of this citation and not as an admission of guilt. I hereby submit to
the jurisdiction of the Court and agree to appear when notified.

X Defendant's Signature _Kevin Hulbert_

I solemnly affirm under the penalties of perjury that the contents of the foregoing citation are true to the best
of my knowledge, information and belief.

Officer's Signature _D. Foy_
Date 6/22/18
Agency MCP
Sub-Agency 0000
ID No. 0160

DC/CR 45 (Rev. 5/2002) Print Date (4/2012)                COURT COPY

EXHIBIT B.3

(Citation to Jeff Hulbert Signed Feb. 6, 2018

CR 6-409(b))

UNIFORM CRIMINAL CITATION
State of Maryland vs.

1220010692260

Defendant's (Last) Name: Hulbert
First: Jeff
Middle: William

Current/Address in Full: PO Box 137301 Tackle circle

City: Chester    State: MD    Zip Code: 21619

DOB: 10-2-53    Height: 5'10    Weight: 200    Sex: M    Race: W2    Hair: Blk    Eyes: Blue

Related Citations: 1730010692271

Telephone No.: _____    Day: ___    Night: ___

It is formally charged that the above named person on: 5 February 2018

at: 2:30 P.M. at Lawyer's Mall S. of water. public.
(Location)
City/County, Maryland

did refuse to leave Lawyer's Mall the property of
state of Maryland a public agency during regular business
hours after being instructed to do so by Sgt Police and willfuly
Hedelibitant was acting in a manner disruptive of
and disturbing to the conduct of normal business.

in violation of: ☑ Md. Ann. Code ☐ COMAR / Agency Code ☐ Common Law of Md. ☐ Ordinance
☐ Public Local Law

Document/Article: CR 6-409(b)    Section: _____    CJIS Code: 1-0344

Penalty: $1,000 / 6 months

TO ANSWER THE ABOVE CHARGE LODGED AGAINST YOU:
YOU ARE HEREBY SUMMONED AND COMMANDED TO APPEAR FOR TRIAL IN THE DISTRICT COURT
OF MARYLAND FOR, _Annapolis____ (CITY/COUNTY) LOCATED AT _570
_____ Taylor Ave._____ MARYLAND
☐ ON _____ Date _____ AT _____ M.
☑ WHEN NOTIFIED BY THE COURT.

YOUR FAILURE TO OBEY THIS CITATION MAY RESULT IN THE ISSUANCE
OF A WARRANT FOR YOUR ARREST.

To request a foreign language interpreter or a reasonable accommodation under
the Americans with Disabilities Act, please contact the court immediately.

I sign my name as a receipt of a copy of this citation and not as an admission of guilt. I hereby submit to
the jurisdiction of the Court and agree to appear when notified.

X Defendant's Signature _____

I solemnly affirm under the penalties of perjury that the contents of the foregoing citation are true to the best
of my knowledge, information and belief.

Officer's Signature _____    Date: 6-28-18    Agency: NCP    Sub-Agency: 0902    ID No.: 0160

EXHIBIT B.4

(Citation to Jeff Hulbert Signed Feb. 6, 2018

COMAR 04.05.01.03)

# UNIFORM CRIMINAL CITATION
## State of Maryland vs.

1220010G9282

Defendant's (Last) Name: Hulbert   First: Jeff   Middle: William

Current Address in Full: PO Box 137301

City: Chester   State: Jackle circle   Zip Code: 21619

DOB: 10-2-53   Height: 5'10   Weight: 200   Sex: M   Race: W   Hair: Grey   Eyes: Blue

Telephone No.:

Related Citations: 12200106930H   Day: 214   Night:

It is formally charged that the above named person on: S. February 2018

at 2:30 P.M. at Lawyer's Hall - Site walk public

Annapolis (Location)   City/County, Maryland

did: prevents or disturbs the general public

from obtaining services provided on the

property or obstructs walks.

In violation of:  ☐ Md. Ann. Code  ■ COMAR / Agency Code  ☐ Common Law of Md.  ☐ Ordinance
☐ Public Local Law

Document/Article: Misdemeanor and may be finable or imprisoned

Penalty:

Section:   CJIS Code:

TO ANSWER THE ABOVE CHARGE LODGED AGAINST YOU:
YOU ARE HEREBY SUMMONED AND COMMANDED TO APPEAR FOR TRIAL IN THE DISTRICT COURT
OF MARYLAND FOR _____ Anne Arundel D.C.S. .......(CITY/COUNTY) LOCATED AT: 5.80 ____ MARYLAND

☐ ON: _____ , _____ AT: _____ .M.
☑ WHEN NOTIFIED BY THE COURT.

**YOUR FAILURE TO OBEY THIS CITATION MAY RESULT IN THE ISSUANCE OF A WARRANT FOR YOUR ARREST.**

To request a foreign language interpreter or a reasonable accommodation under the Americans with Disabilities Act, please contact the court immediately.

I sign my name as a receipt of a copy of this citation and not as an admission of guilt. I hereby submit to the jurisdiction of the Court and agree to appear when notified.

X Defendant's Signature

I solemnly affirm under the penalties of perjury that the contents of the foregoing citation are true to the best of my knowledge, information, and belief.
Officer's Signature

Date: 8/28/18 HCP   Agency: DPSCS   Sub-Agency No.: 0160

DC/CR 45 (Rev. 5/2002) Print Date (4/2012)   COURT COPY