**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Jeff Hulbert, *et al*.<br><br>      *Plaintiffs*,<br><br>      v.<br><br>Sgt. Brian Pope, *et al*.<br><br>      *Defendants*. | Civil No.: 1:18-CV-00461-GLR |

**PLAINTIFFS' MOTION TO STRIKE AFFIDAVIT AND REPLY AND/OR
MOTION TO FILE SUR-REPLY**

Come now the Plaintiffs, by and through undersigned counsel, and submit the aforesaid Motion, stating as follows:

**I.**     **INTRODUCTION**

In an attempt to cure a fatal defect in his Motion to Quash and for Protective Order, Lieutenant Governor Boyd K. Rutherford (the "Lt. Governor") has now filed a Reply in Further Support of Motion to Quash Subpoena and for Protective Order, attaching a supporting affidavit in contravention of the Federal Rules of Civil Procedure. *See* ECF 38.  The filing of the affidavit as an attachment to the Reply rather than the original Motion strips Plaintiffs of their ability to adequately respond to the new facts stated in the affidavit, and the new argument premised upon those facts in the Reply.  Permitting the filing of the affidavit denies Plaintiffs due process and results in significant prejudice. Accordingly, the affidavit and the Reply should be struck; or, in the alternative, this Court should allow Plaintiffs to file a surreply to address the new issues raised.

## II.     ANALYSIS

As Plaintiffs noted in their Opposition, the Lt. Governor's Motion is predicated solely on the carefully-worded allegation that the Lt. Governor lacks knowledge of any of the issues on which Plaintiffs seek to depose him. *See* ECF 37. However, despite being the cornerstone of the Lt. Governor's argument, the Lt. Governor failed to provide any support for his allegations in his original Motion; he provided no citations to any evidence in the record, did not attach an affidavit of support, and has not provided any oral testimony.

As a matter outside the evidentiary record, the Lt. Governor's allegations ***must*** have been supported by either an affidavit or oral testimony.  *See* Fed. R. Civ. P. 43(c).  This Court should not rely on unsupported facts in deciding any motion, and once the unsupported facts are removed, nothing remains to support the Lt. Governor's original Motion.

Recognizing his failure, the Lt. Governor now attempts to retroactively cure his procedural failure by attaching a supporting affidavit to his Reply.  *See* ECF 38-1.  But his attempt to cure comes too late and in a form that is not compliant with the Federal Rules. The Federal Rules require that a motion supported by an affidavit be served together with the affidavit; the Federal Rules do not contemplate permitting an affidavit intended to support an original motion to be attached and filed instead with a reply. *See* Fed. R. Civ. P. 6(c)(2). To permit this contravention of the Federal Rules would be to deny the Plaintiffs due process—the rules are constructed to require the movant to identify each basis on which the movant's motion is premised, and the factual support therefore, to permit the respondent to fully address each basis in the respondent's opposition. The Lt. Governor's introduction of new facts and argument in a reply brief restrains the Plaintiffs from addressing the impact of those facts and the validity of the new argument.

Here, specifically, the Lt. Governor has taken the opportunity to review the Plaintiffs' explicit list of issues on which Plaintiffs contend the Lt. Governor has knowledge, and tailor an affidavit in response. However, the Lt. Governor has taken the Plaintiffs' list of ***fifteen items*** and responded to ***none of them***. If the Lt. Governor is permitted to introduce his facts as he sees fit without the Plaintiffs being afforded the opportunity to address how the proffered affidavit is completely nonresponsive, Plaintiff would be significantly prejudiced.

For example, Plaintiffs identified a variety of issues on which the Lt. Governor would have knowledge, including, *but not limited to*, whether the Lt. Governor provided any direction to his staff or the Capitol Police regarding the Plaintiffs in particular or picketers in general; whether the Lt. Governor discussed the Plaintiffs with any individual on February 5, 2018, who knew his whereabouts on that day; and who in the Governor's Mansion typically acted as intermediaries on the Lt. Governor's behalf.

It is evident from discovery collected to date that the Lt. Governor is highly likely to have personal knowledge on at least one, if not all, of the fifteen identified issues. Plaintiffs recently deposed Lakeshia Wesby ("Wesby"), the civil communications officer employed by the Maryland Capitol Police, who took the call from the Lt. Governor's team which lead to the wrongful arrest of Plaintiffs.  In her testimony, Wesby confirmed that elected officials do, in fact, call the Maryland Capitol Police for assistance regarding protestors on or near Lawyer's Mall. Exhibit A (Deposition of Lakeshia Wesby) at 34.  Ms. Wesby further admitted that those types of calls originating from the Governor's Mansion have been about the Lt. Governor in the past. *Id*. at 37.  Those calls would always be placed on or behalf of an elected official, and the usual response to one of those calls was to move the protestors out of the path of the elected official. *Id*. at 48; 52. Ms. Wesby could not identify the caller, but she did testify that the caller was

3

someone "who worked for the Maryland State Police in executive protection." *Id*. at 60. She admitted, on the basis of her nineteen years of experience, that she had interpreted the call regarding the Plaintiffs as one of these types of calls. *Id*. at 66-69. As there is testimonial evidence that the call originated from the Governor's Mansion, on behalf of the Lt. Governor, for the purpose of moving Plaintiffs out of the path of the Lt. Governor, placed by a member of the Lt. Governor's executive protection team, it defies credulity to assert that the Lt. Governor has no personal knowledge of any of the circumstances surrounding his own staff's request to the Maryland Capitol Police.

The Lt. Governor's affidavit ignores all of these issues, declaring solely:

> 4. I did not instruct, encourage or request anyone to call the Maryland Capitol Police on February 5, 2018 concerning any protesters. In fact, I had no knowledge that such a call was made until well after the fact.
>
> 5. I have listened to the audio recording of the February 5, 2018 call. I do not recognize the voice of the person who made the call, and I do not know the identity of the person who made the call.

ECF 38-1 at 1. The carefully precise language of the affidavit manages to avoid answering even a single identified issue—the Lt. Governor claims that he did not instruct or request that anyone call the Maryland Capitol Police but he does ***not*** say that no instruction or request was made, leaving open the distinct possibility that such a request ***was*** made, but without specifying that the contact be made by phone. If this affidavit is allowed to stand without response from Plaintiffs, Plaintiffs' due process rights will be drastically impaired as Plaintiffs will be unable to point out this disparity—among countless others—to the Court. Plaintiffs should be allowed to identify each insufficiency, each contradiction, each issue on which the affidavit is completely silent.

In fact, the Lt. Governor has now retreated entirely from the position that he asserted in his original Motion. In the original Motion, the Lt. Governor broadly claimed he had no

knowledge: "Lt. Governor Rutherford is a nonparty who lacks any personal knowledge of the facts at issue in this case." *See* ECF 36, pg. 1. His Reply has taken several steps backwards, claiming narrowly that the Lt. Governor "lacks any personal knowledge about the February 5, 2018 police call, including who made it." *See* ECF 38, pg. 3. Due process dictates that Plaintiffs should have the opportunity to respond to the Lt. Governor's new argument. As Plaintiffs have been stripped of such opportunity, the affidavit and the Lt. Governor's Reply should be struck.

In the alternative, this Court may cure any prejudice that Plaintiffs would suffer by permitting Plaintiffs to file a surreply in response, attached hereto as Exhibit B. A party may not file a surreply without the permission of the Court. *See* Local Rule 105.2(a). While it is true that surreplies "are generally disfavored," (*See Courtney-Pope v. Bd. of Educ. of Carroll Cty.*, 304 F. Supp. 3d 480, 485 (D. Md. 2018) (quoting *EEOC v. Freeman*, 961 F.Supp.2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015)) (internal citation omitted)), a common exception is the situation currently presenting itself, where a reply brief raises an argument that the respondent has not had the opportunity to address. Here, a surreply is appropriate. *See Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 722–23 (D. Md. 2017).

New facts and argument have been introduced in the Lt. Governor's Reply that were not included previously—facts and argument that were required to be identified and supported by affidavit in the original motion under the Federal Rules specifically to allow Plaintiffs the opportunity to respond. The additional arguments include not only the extent of the Lt. Governor's personal knowledge, as discussed above, but also the contention that "plaintiffs have not provided any evidence that [the subpoena] was properly served on the Lt. Governor"—an assertion raised for the first time in the Lt. Governor's Reply. *See* ECF 38, pg. 2. This Court

should permit the filing of a surreply to protect Plaintiffs' due process rights and to allow full briefing of the issues prior to the Court's ruling on the Lt. Governor's original motion.

## IV. CONCLUSION

For all the aforementioned reasons, Lt. Gov. Rutherford's Reply in Further Support of Motion to Quash Subpoena and for Protective Order should be struck. In the alternative, Plaintiffs' Motion to File Surreply should be granted.

Respectfully submitted,

HANSEL LAW, PC

/s/ Cary J. Hansel
Cary J. Hansel (Bar No. 14722)
cary@hansellaw.com
2514 N. Charles Street
Baltimore, MD 21218
Phone: (301) 461-1040
Fax: (443) 451-8606
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2019, I caused the foregoing to be filed via the Court's electronic filing system, which will make service on all parties entitled to service.

/s/ Cary J. Hansel
Cary J. Hansel