**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

Jeff Hulbert, *et al*.

       *Plaintiffs*,

    v.

Sgt. Brian Pope, *et al*.

       *Defendants*.

Civil No.: 1:18-CV-00461-GLR

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Plaintiffs, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 37 and Local Rule 104, respectfully move this Honorable Court to compel responses to requests for production of documents.

**TABLE OF CONTENTS**

I.     INTRODUCTION...................................................................................................2

II.    DEFICIENCIES IN THE RESPONSE TO REQUESTS FOR DOCUMENTS................8

III.   CONCLUSION.....................................................................................................18

CERTIFICATE OF SERVICE................................................................................19

RULE 26(C) CERTIFICATION OF COUNSEL.......................................................19

**TABLE OF EXHIBITS**

EXHIBIT A: Deposition of Lakeshia Wesby.........................................................3, 16

EXHIBIT B: Deposition of Col. Michael Wilson.................................................5, 10

EXHIBIT C: Notice of Deposition......................................................................6

EXHIBIT D: Notice of Deposition of Lt. Governor Rutherford.....................................6

EXHIBIT E: October 15, 2019 Email to Defendants' Counsel.......................................6

EXHIBIT F: October 16, 2019 Email from Defendants' Counsel...................................6

EXHIBIT G: October 17, 2019 Emails Between
Defendants' Counsel and Plaintiffs' Counsel..........................................................................6, 11

EXHIBIT H: Maryland Capitol Police Directive............................................................................7

EXHIBIT I: October 25, 2019 Email from Defendants' Counsel....................................................7

EXHIBIT J: October 28, 2019 Emails from Defendants' Counsel.............................................7, 8

EXHIBIT K: February 14, 2018 Emails........................................................................................10

EXHIBIT L: November 5, 2017 Incident Report..........................................................................11

EXHIBIT M: October 19, 2017 Incident Report...........................................................................11

EXHIBIT N: February 9, 2018 Emails Regarding Public Statement......................................11, 14

EXHIBIT O: February 9, 2018 Emails..........................................................................................13

## I.  __INTRODUCTION__

1.      This case arises out of the unlawful arrest of Plaintiffs Jeff and Kevin Hulbert, who were erroneously charged with misdemeanor criminal citations for lawfully exercising their First Amendment rights.

2.      On February 5, 2018, Plaintiffs were peacefully picketing in Maryland's capital as members of Patriot Picket, an informal group founded by Plaintiffs to oppose infringement of Second Amendment rights. The Plaintiffs were picketing on a public sidewalk, neither impeding nor interfering with the movement of pedestrians. Plaintiff Jeff Hulbert, along with a few other members of Patriot Picket, was holding a sign addressing Second Amendment rights. Plaintiff Kevin Hulbert was recording the demonstration on his cell phone.

3.      While the Plaintiffs and Patriot Picket had picketed in the same location without issue on several prior occasions, the demonstration on February 5, 2018, was different. Patriot Picket had attracted the attention of the Governor's Mansion. As the demonstration was underway, the Maryland Capitol Police received a call from the State Police executive protection detail in the

Governor's Mansion. The caller told the Maryland Capitol Police that "the lieutenant governor was about to walk to the senate building or from the senate building, and they didn't want the protestors to interact with the lieutenant governor." *See* ECF (Deposition of Sgt. Brian T. Pope) at 125.

4.      The civil communications officer who took the call, Lakeshia Wesby, knew that this type of call from or on behalf of elected officials must be treated urgently "because of the importance of the people who [are] calling." *See* Exhibit A (Deposition of Lakeshia Wesby) at 51. She also knew the likely outcome of the call—she receives similar calls on a regular basis, approximately twice a month, and always forwards the calls to a sergeant for the express purpose of helping the official to avoid interaction with demonstrators. *Id*. at 45-48. The usual response was "to have the officer in the field move people:" a direction that she had received before. *Id*. at 52-54. Even though she knew what would likely happen, Lakeshia Wesby directed the call to Defendant Sgt. Brian T. Pope.

5.      Defendant Sgt. Brian T. Pope responded to the call by approaching Patriot Picket and asking them to relocate to Lawyer's Mall. He knew that asking them to move was inappropriate and unconstitutional, as asking individuals to move solely to "prevent[] people from interacting with the lieutenant governor" is "against their constitutional rights." *See* ECF (Deposition of Sgt. Brian T. Pope) at 126-127. Pope even knew that "people have a right to be there even when the lieutenant governor might walk by." *Id*. at 128.

6.      Lawyer's Mall is an area of the capitol that is restricted to demonstrators holding the necessary permits to assemble in the area. Patriot Picket did not have the required permits to demonstrate in Lawyer's Mall. Still, some of the members did relocate after Defendant Pope's instruction. Plaintiffs, however, remained on the public sidewalk.

7.     Defendant Pope then returned and placed Plaintiff Jeff Hulbert in handcuffs. Plaintiff Kevin Hulbert recorded the arrest from a reasonable distance before also being placed under arrest. The Plaintiffs were then taken to the Annapolis City Police Precinct and locked to a bench inside. Eventually, Plaintiffs were released and issued a single citation for "acting in a manner disruptive of and disturbing to the conduct of normal business" and for "prevent[ing] or disturb[ing] the general public from obtaining services provided on the property or obstruct[ing] walks."  ECF 1 at ¶38.

8.     Defendant Pope admitted under oath that he did not observe Plaintiffs engage in any of the cited behavior:

> Q.  Did you ever observe either of the Hulberts disturbing any normal business that was going on there before the police arrived, before the group of eight officers was there?
>
> A.  What do you mean, disturb normal business?
>
> Q.  Disturbing the conduct of any normal business.
>
> A.  No.
>
> Q.  Did you see the Hulberts disturbing the peace in any way before the eight officers were on the scene?
>
> A.  No.
>
> Q.  Now after the eight officers arrived, did you see the Hulberts disrupting normal business or disturbing the peace?
>
> A.  No.

*See* ECF (Deposition of Sgt. Brian T. Pope) at 142-143.

9.     Rather than any valid law enforcement purpose, the motivation behind Defendant Pope's attempt to relocate Plaintiffs and the subsequent arrests was the call from the Governor's

Mansion. Defendant Chief Michael Wilson admitted that the call "put the process in motion," resulting in the Hulberts' arrest. *See* Exhibit B (Deposition of Col. Michael Wilson) at 25.

10.     On February 6, 2018, Plaintiffs met with members of the media for interviews on the sidewalk where they had been arrested. During the interviews, Defendant Wilson approached Plaintiffs and told Plaintiffs that the social media and news coverage of the incident portrayed Defendants in a negative light before citing each Plaintiff with two additional charges. The additional charges were separate and distinct misdemeanor charges from the citations issued to Plaintiffs the night before.

11.     As stated more fully in the Complaint, Plaintiffs allege that Defendants unconstitutionally abridged their First Amendment right to freedom of speech with regard to their right to peacefully demonstrate (Count One), lawfully film a peaceful demonstration (Count Two), and engage in protected speech (Count Three). *See* ECF 1.

12.     Plaintiffs also allege that Defendants unconstitutionally violated Plaintiffs' Fourth Amendment rights by unreasonably searching, seizing, and arresting Plaintiffs without probable cause (Count Four) and utilizing unreasonable and unnecessary force (Count Five). *Id*.

13.     Plaintiffs further contend Defendants' conduct violated Plaintiffs' rights under the Maryland Declaration of Rights, including Plaintiffs' right to free speech (Count Six), freedom from unlawful deprivation of property and liberty without due process (Count Seven), and right to be free from excessive force (Count Eight). *Id*.

14.     Finally, Plaintiffs allege that Defendants' conduct constituted false arrests (Count Nine) and false imprisonment (Count Ten). *Id*.

15.     On September 5, 2019, Plaintiffs served a Notice to Take Deposition Duces Tecum on Defendants' counsel requiring the production of responsive documents to eight separate requests by October 7, 2019, at 9:00 a.m. *See* Exhibit C (Notice of Deposition).

16.     On September 5, 2019, Plaintiffs also served four subpoenas for depositions, including a Notice to Take Oral Deposition of Lt. Governor Boyd K. Rutherford, which set the deposition for 10:00 a.m. on October 16, 2019. *See* Exhibit D (Notice of Deposition of Lt. Governor Rutherford).

17.     On October 15, 2019, eight days beyond the deadline for production, Plaintiffs' counsel reached out to Defendants' counsel to inquire as to the status of the production. *See* Exhibit E (October 15, 2019 Email to Defendants' Counsel).

18.     Defendants' counsel responded to Plaintiffs' counsel the following day to advise that he would produce the documents on October 25, 2019. *See* Exhibit F (October 16, 2019 Email from Defendants' Counsel).

19.     On October 17, 2019, Defendants' counsel indicated that they would conduct a reasonable search for responsive documents by sending an inquiry to a number of individuals who had received an email sent by Defendant Wilson. Plaintiffs' counsel agreed to see what response the inquiry elicited, but clearly informed Defendants' counsel that additional steps may be required depending on the response and that Plaintiffs did not agree that the inquiry alone would satisfy Defendants' production obligations. *See* Exhibit G (October 17, 2019 Emails Between Defendants' Counsel and Plaintiffs' Counsel).

20.     Attached to Defendants' counsel's email on October 17, 2019, was a single document produced in response to Plaintiffs' Notice to Take Deposition Duces Tecum; an

Operations Directive prepared by the Maryland Capitol Police responsive solely to Plaintiffs' Request No. 1. *See* Exhibit H (Maryland Capitol Police Directive).

21.     On October 25, 2019, Defendants' counsel advised that he had "received documents from at least two people from our list" in response to the email inquiry. The referenced documents were not provided. *See* Exhibit I (October 25, 2019 Email from Defendants' Counsel).

22.     On October 28, 2019, at 4:12 and 4:13 p.m., aware of Plaintiffs' intention to file this Motion, Defendants produced additional documents. The production totals 231 pages. However, 132 pages of the produced documents are copies of court filings in this case, 16 pages are blank or effectively blank, and many of the remaining 83 pages are duplicative. *See* Exhibit J (October 28, 2019 Emails from Defendants' Counsel).

23.     It is evident from the produced documents, which consist primarily of emails and publicly available documents such as Google Alerts listing news articles published in February 2018 and Facebook ratings for the Maryland Capitol Police Facebook page, barely scratch the surface of two of Plaintiffs' requests for documents and are unresponsive to any of the remaining requests.

24.     Although Plaintiffs' requests for documents seek documentation extending beyond the Maryland Capitol Police to all State employees or officials, Defendants continue to only produce documents from the Maryland Capitol Police. Other State employees' or officials' knowledge of or involvement in the incident is central to Plaintiffs' case—as evidenced by the fact that a call originating from the Governor's Mansion, outside of the Maryland Capitol Police, was placed by a State Police employee and not a Maryland Capitol Police officer—and Defendants' continuing failure to provide documentation beyond those of the Maryland Capitol Police is highly prejudicial to Plaintiffs.

25.     Without full discovery, Plaintiffs have been unable to determine key elements of the circumstances surrounding Plaintiffs' arrests. Despite numerous attempts to discover the identity of the caller from the Lt. Governor's executive protection team, for example, Plaintiffs have been unable to discover who placed the call, who instructed that the call be placed, and who in the Governor's Mansion knew about the call. Defendants continue to stonewall Plaintiffs by failing to respond at all to Plaintiffs' Request No. 8.

26.     If Defendants opposed the scope of any of Plaintiffs' requests, Defendants could have filed a motion for protective order. But Defendants have failed to file any timely discovery motions challenging Plaintiffs' requests.

27.     In addition, Defendants' counsel indicated on October 28, 2019 that some of the documents produced were "redacted to exclude some private identifier information and privileged communications." However, no privilege log was provided to Plaintiffs as required by Fed. R. Civ. P. 26. *See* Exhibit J (October 28, 2019 Email from Defendants' Counsel).

28.     As of October 28, 2019, at 11:00 p.m., Defendants' counsel has failed to provide any additional responses to Plaintiffs' request for production.

29.     Defendants' responses to Plaintiffs' Requests No. 2 through 8 are insufficient and incomplete. Defendants' discovery deficiencies are summarized below.

## II.     DEFICIENCIES IN THE RESPONSE TO REQUESTS FOR DOCUMENTS

**REQUEST NO. 2**: The recordings (audio and/or visual) and documents (including, but not limited to, police reports, police files, correspondence, notes, e-mail, memoranda, and journal entries) which relate to, describe, summarize, or memorialize any communication by or between any Maryland state employee(s) or official(s) (whether appointed or elected), or anyone known or believed to have been acting under the authority of any Maryland state employee(s) and/or

official(s), concerning the Patriot Picket's activities in Annapolis, Jeff or Kevin Hulbert, the Hulberts' activities on February 5, 2018, the Hulberts' February 5, 2018 arrest, the Hulberts' charging on February 5 and/or 6, 2018, or the decision to drop charges.

**Response**: Defendants' response to Plaintiffs' Request No. 2 is incomplete. While Defendants produced some emails in response to Plaintiffs' Request No. 2, it is clear that the produced emails barely begin to scratch the surface of the universe of documents responsive to Request No. 2. Defendants' response is woefully inadequate for two reasons: (1) Defendants have failed to conduct a complete investigation to identify responsive documents, and (2) Defendants have impermissibly drastically narrowed the scope of Plaintiffs' Request No. 2.

The investigation that Defendants have conducted is spotty and cursory. From the beginning, it was clear that Defendants did not intend to complete a thorough investigation: in an attempt to convince Plaintiffs that Defendants were fulfilling their discovery obligations, Defendants' counsel informed Plaintiffs' counsel that he would "conduct a reasonable search for additional responsive documents by making inquiry to the addressees listed in email from Chief Wilson." *See* (October 17, 2019 Emails Between Defendants' Counsel and Plaintiffs' Counsel). What Defendants' counsel was truly proposing was simply to send a blast email into the void and expect that the individuals receiving the email would respond with all responsive documents, no further investigation necessary. If no response was forthcoming, then no responsive documents must exist. Plaintiffs' counsel agreed that the blast email could be a *first step* in identifying responsive documents—but in no way agreed that the blast email could suffice as the entirety of the investigation. *Id*.

It is clear that the emails produced have been identified in that manner. But Defendants have failed to fully complete the basic investigation promised by Defendants' counsel, much less

conduct the full, reasonable investigation required under discovery rules. The majority of the emails produced appear to have been retrieved from the email inboxes of a handful of the individuals on the list Defendants' counsel identified: namely, Major Todd May, Capt. Rebecca Labs, Sgt. Dennis Donaldson, Deputy Chief Terry Custer, and Eric Yealdhall. Other individuals on the list either do not appear on any of the emails produced, or appear in the midst of a conversation string.

For example, Secretary Ellington Churchill is the first individual on Defendants' counsel's list. *Id*. However, Secretary Churchill only appears in the emails provided in the middle of a conversation, replying to an email sent by Nick Cavey. *See* Exhibit K (February 14, 2018 Emails). If the emails produced by Defendants were complete, then this particular email chain should be reproduced multiple times—it should appear in the form retrieved from Defendant Wilson's email, in the form retrieved from Nick Cavey's email (another individual identified on Defendants' counsel's list), and in the form retrieved from Secretary Churchill's email. Only one incomplete copy of the email chain has been provided; without the first page of the email chain it is impossible to determine who's email the chain was retrieved from, but it is evident that it is not from Secretary Churchill's. *Id*. It is clear that Secretary Churchill has received, and likely sent, pertinent and responsive emails, and Defendants' failure to investigate Secretary Churchill's email is not harmless. Defendant Wilson swore under oath that he gave information about the incident directly to Secretary Churchill and sent an email with the recording of the phone call attached—a communication that has not be disclosed either from Defendant Wilson's email or from Secretary Churchill's. See Exhibit B (Deposition of Col. Michael Wilson) at 36-37.

Defendants' production cannot conceivably be considered complete when potentially significant emails lay undiscovered in email inboxes that Defendants have failed to search, and

when the emails that *have* been provided are blatantly missing pages. Some of the provided emails also fail to attach referenced pdf files. Compare, for example, the official case report that appears to have been attached to an email regarding an incident on November 5, 2017 as "2017-000639_8577.pdf" with the email that Defendants produced immediately prior, which references a document titled "2017-000607_3383.pdf" without providing any additional documentation. *See* Exhibit L (November 5, 2017 Incident Report); *but see* Exhibit M (October 19, 2017 Incident Report).

Secretary Churchill is not the only person's email that has been passed over—other individuals, such as Nick Cavey, also only appear in the middle of conversation strings, indicating that their email has also not been searched. *See* Exhibit N (February 9, 2018 Emails Regarding Public Statement). Other individuals identified in Defendants' counsel's list do not seem to appear at all in the emails, such as Delegates Sid Saab and Eric Bromwell. *See* Exhibit G (October 17, 2019 Emails Between Defendants' Counsel and Plaintiffs' Counsel).

Further, Defendants have impermissibly narrowed the scope of Plaintiffs' Request No. 2. Plaintiffs' request specifically identifies recordings or documents—not solely emails—by "***any Maryland state employee(s) or official(s) (whether appointed or elected)***, or anyone known or believed to have been acting under the authority of any Maryland state employee(s) and/or official(s)." The produced documents not only narrow the scope of the ***type*** of documentation to simply email correspondence, but also drastically limits the production to correspondence by and between employees of the Maryland Capitol Police. With regard to the first limitation, it is striking how the Defendants have presumed that all State agencies, including police organizations, have reduced communications solely to email. Such an interpretation would necessarily imply that ***no*** individual in ***any*** state agency took handwritten notes, wrote a formal or casual memorandum,

jotted lines on a post-it note, recorded verbal thoughts in an audio recording, or called another individual in any agency over a recorded phone line. Such interpretation also implies that no physical police reports or files exist outside of the pdf one-page summaries emailed out to Maryland Capitol Police employees—that nothing additional was prepared or compiled when two individuals were *placed under arrest*.

The drastic limitation of discovery to documents retrieved from the email inboxes of Maryland Capitol Police employees also significantly prejudices Plaintiffs, and effectively stonewalls Plaintiffs from discovering vital information. It is clear that the incident involved more State employees and officials than simply the Maryland Capitol Police. The call that was placed from the Governor's Mansion that incited the false arrests of Plaintiffs specifically referenced the Lt. Governor: the caller told the Maryland Capitol Police that "the lieutenant governor was about to walk to the senate building or from the senate building, and they didn't want the protestors to interact with the lieutenant governor." *See* ECF 37-1 (Deposition of Sgt. Brian T. Pope) at 125. Although Plaintiffs have been unable to identify the caller to date, the caller has been identified as a male State Police employee working on the executive protection detail in the Governor's Mansion. Thus, the key actors on February 5, 2018 span far beyond simply the officers at the Maryland Capitol Police to the State Police, the employees of the Governor's Mansion, and even, potentially, the Lt. Governor and Governor themselves.

It is for this reason that Plaintiffs sought discovery of communications extending to all State employees and officials; it is highly unlikely that this single call existed in a vacuum, separate and distinct from all other communications that day and the days surrounding the incident. Who knew that the call was going to placed? Who requested that the call be made? Who intended that the Plaintiffs be removed from legally demonstrating on a public sidewalk? Who condoned the

arrests of Plaintiffs for legal behavior? The answers to all of those questions are central to Plaintiffs' case, and cannot be answered by limiting the scope to the Maryland Capitol Police alone.

Not a single email produced appears to have originated from, or been addressed to, any individuals at the Governor's Mansion. Other than a few emails originating from Justin Rogers, a member of Attorney General Frosh's executive protection detail, and Cpl. Robert Parham, none of the emails appear to involve the State Police, the entity employing the caller from the Lt. Governor's executive protection team. See Exhibit O (February 9, 2018 Emails). At the time, the incident attracted significant media attention, and several elected officials and State employees spoke publicly about the Plaintiffs' arrests, including Sen. Michael J. Hough (R-Frederick), Sen. Thomas V. Mike Miller (D-Calvert), House Minority Leader Nic Kipke (R-Pasadena), House Minority Whip Kathy Szeliga (R-Baltimore County), and  Maryland Department of General Services spokesman Nick Cavey. *See* Bruce DePuyt, *2nd Amendment Advocates Arrested Outside State House, Allege 1st Amendment Violations*, MARYLAND MATTERS, Feb. 5, 2018, https://www.marylandmatters.org/2018/02/05/2nd-amendment-advocates-arrested-outside-state-house-allege-1st-amendment-violations/; Phil Davis, *Charges Dropped Against Gun Rights Advocates Arrested In Annapolis*, CAPITAL GAZETTE, Feb. 9, 2018, https://www.capitalgazette.com/news/crime/ac-cn-annapolis-charges-dropped-0210-story.html; Chase Cook, *Gun Rights Group Plans Larger Protest After Two Members Arrested In Annapolis*, CAPITAL GAZETTE, Feb. 6, 2018, https://www.capitalgazette.com/politics/ac-cn-capitol-police-arrest-0207-story.html.

The statements made by spokesman Nick Cavey required considerable communication—consider, for example, the number of individuals that contributed to or were cc'd on the email

conversation among the Maryland Capitol Police regarding a statement in response to a question by a FOX45 News reporter, which spanned over 24 hours before a response was crafted. *See* Exhibit N (February 9, 2018 Emails Regarding Public Statement). In contrast, no emails have been produced by Defendants that involve the elected officials or their staff prior to the release of their public statements.

The deficiencies noted above are pervasive and extensive. Defendants have not responded fully and adequately to Plaintiffs' Request No. 2 until Defendants have provided all of the emails, in their entirety, with all attachments, originating from or received by "any Maryland state employee(s) or official(s) (whether appointed or elected)."

**REQUEST NO. 3**: Please produce all e-mail communication related in any way to the Hulberts, or any of the matters identified in Request No. 2 above, by or between Col. Michael Wilson, Chief of the Maryland Capital Police, and:

a) the office of the Anne Arundel County State's Attorney (*see* Wilson Deposition at 55);
b) Chief Wilson's lieutenants (*see* Wilson Deposition at 55);
c) Chief Wilson's commanders (*see* Wilson Deposition at 55);
d) Chief Wilson's Detachment Commander (*see* Wilson Deposition at 55);
e) the media (*see* Wilson Deposition at 57);
f) Ellington Churchill, Jr., Secretary, Maryland Department of General Services; and
g) Nick Cavey, Director Of Communications at Maryland Department of General Services (*see* Wilson Deposition at 58).

This request includes, but is not limited to, any e-mails from any person listed in Request 3(a) to and including 3(g) above to anyone else regarding the Hulberts, as well as the responses and any related e-mails any recipient(s) sent or received.

**Response**: Defendants' response to Plaintiffs' Request No. 3 is incomplete. *See* Response to Request No. 2, *supra*.

**REQUEST NO. 4**: Please produce all recordings (audio and/or visual) and documents (including, but not limited to, police reports, police files, correspondence, notes, e-mail, memoranda, and journal entries) related in any way to the Hulberts, or any of the matters identified in Request No. 2 above, created, sent, received, stored or reviewed by Maryland Governor Larry Hogan, The Office of the Governor, Maryland Lieutenant Governor Boyd Rutherford, The Office of the Lieutenant Governor, Secretary of the Department of General Services Ellington Churchill, Jr., The Department of General Services, The Maryland State Police, Col. Michael Wilson (Chief of the Maryland Capital Police), The Maryland Capital Police, or any of their protection details, offices, agents, apparent agents, assigns, staff or employees.

**<u>Response</u>**: Defendants have failed to produce any recordings or documentation responsive to Plaintiffs' Request No. 4. It is highly likely that responsive recordings and documents highly relevant to this case exist that Defendants have failed to disclose. *See* Response to Request No. 2, *supra*.

**REQUEST NO. 5**: Please produce all recordings (audio and/or visual) and documents (including, but not limited to, police reports, police files, correspondence, notes, e-mail, memoranda, and journal entries) relating to or reflecting requests by any appointed or elected official, their protection details, offices, agents, apparent agents, assigns, staff or employees, to law enforcement to move, relocate, investigate, contact, examine, speak with, direct, order, interfere with, or otherwise interact in any way with picketers, protesters, speakers, demonstrators, and/or others engaging in or attempting to engage in First Amendment activity during a legislative session in Annapolis, Maryland.

**<u>Response</u>**: Defendants have failed to produce any recordings or documentation responsive to Plaintiffs' Request No. 5. It is highly likely that responsive recordings and documents highly

relevant to this case exist that Defendants have failed to disclose. *See* Response to Request No. 2, *supra*. Defendants have also failed to indicate whether or not documents may exist relating to other incidents that may have occurred with protestors prior and subsequent to the incident at issue in this case. Lakeshia Wesby, a civil communications officer employed by the Maryland Capital Police, testified that she receives calls regarding protestors at least twice a month. *See* Exhibit A (Deposition of Lakeshia Wesby) at 45-48. If *one* communications officer working *one* shift at the Maryland Capitol Police receives this type of call approximately 24 times a year, there must be *numerous* prior incidents responsive to Plaintiffs' Request No. 5.

**REQUEST NO. 6**: Please produce all recordings (audio and/or visual) and documents (including, but not limited to, police reports, police files, correspondence, notes, e-mail, memoranda, and journal entries) relating to or reflecting requests by Lieutenant Governor Boyd Rutherford, The Office of the Lieutenant Governor, the Lt. Governor's protection details, offices, agents, apparent agents, assigns, staff or employees, to law enforcement to move, relocate, investigate, contact, examine, speak with, direct, order, interfere with, or otherwise interact in any way with picketers, protesters, speakers, demonstrators, and/or others engaging in or attempting to engage in First Amendment activity during a legislative session in Annapolis, Maryland.

**Response**: Defendants have failed to produce any recordings or documentation responsive to Plaintiffs' Request No. 6. It is highly likely that responsive recordings and documents highly relevant to this case exist that Defendants have failed to disclose. *See* Response to Request No. 2, *supra*.

**REQUEST NO. 7**: Please produce all recordings (audio and/or visual) and documents (including, but not limited to, police reports, police files, correspondence, notes, e-mail, memoranda, and journal entries) relating to or reflecting requests by Governor Larry Hogan, The

Office of the Governor, the Governor's protection details, offices, agents, apparent agents, assigns, staff or employees, to law enforcement to move, relocate, investigate, contact, examine, speak with, direct, order, interfere with, or otherwise interact in any way with picketers, protesters, speakers, demonstrators, and/or others engaging in or attempting to engage in First Amendment activity during a legislative session in Annapolis, Maryland.

**Response**: Defendants have failed to produce any recordings or documentation responsive to Plaintiffs' Request No. 7. It is highly likely that responsive recordings and documents highly relevant to this case exist that Defendants have failed to disclose. *See* Response to Request No. 2, *supra*.

**REQUEST NO. 8**: Documents sufficient to identify the male, thought to be a Maryland State Police Officer, who called from the Governor's Mansion to the Maryland Capital Police on February 5, 2018 in connection with picketers later ascertained to be the Patriot Picket.

**Response**: Defendants have failed to produce any documentation responsive to Plaintiffs' Request No. 8. Although Plaintiffs have attempted to discover the identity of the caller and any persons who directed or requested the call be made through numerous avenues, Defendants have stonewalled Plaintiffs at each turn. This is information that is squarely within the purview of Defendants: through discovery, the Plaintiffs have obtained a recording of the call, and the exact time and location of the caller are now known. Plaintiffs' efforts in depositions have clarified that the caller is a male who is employed by the State Police in the Lt. Governor's executive protective team. With the totality of that information, it should be simple for the Defendants to identify the individual who was working on the team that night and placed a call at that precise time on a recorded line specifically to the Maryland Capitol Police. However, Defendants have failed to conduct the *minimal* investigation necessary to provide responsive documentation.

Compounding the issue is Defendants' failure to provide any documentation responsive to any of Plaintiffs' requests for documentation originating from any employees of the State Police—the caller's employer. Without full discovery on each of Plaintiffs' requests for documentation, it will be impossible for the Plaintiff to identify the caller, and in turn, determine who instructed the call to be placed; a vital component of Plaintiffs' case.

## III.   <u>CONCLUSION</u>

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant their Motion and order Defendants to respond to Plaintiffs' discovery requests on or before seven days after the entry of this Order at 4:30 p.m., and for such further relief as the Court may grant in the interest of justice.

Respectfully submitted,

HANSEL LAW, PC

_____/s/ Cary J. Hansel_____
Cary J. Hansel (Bar No. 14722)
cary@hansellaw.com
2514 N. Charles Street
Baltimore, MD 21218
Phone: (301) 461-1040
Fax: (443) 451-8606
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of October, 2019, I caused the foregoing to be filed via the Court's electronic filing system, which will make service on all parties entitled to service.

_____/s/ Cary J. Hansel_____
Cary J. Hansel


## **RULE 26(C) CERTIFICATION OF COUNSEL**

The undersigned certifies, pursuant to Rule 26(c), that the undersigned attempted in good faith to resolve this discovery dispute. On September 25, 2019, counsel for Plaintiffs contacted counsel for Defendants via electronic mail, inquiring into the status of Plaintiffs' discovery request and notifying counsel of the discovery deficiencies. On October 15, 2019, counsel for Plaintiffs contacted counsel for Defendants again via electronic mail to inquire into the status of production and notify counsel of the discovery deficiencies. Counsel for Defendants responded via electronic mail on the following day to advise he would produce responsive documents by October 25, 2019. On October 17, 2019, counsel for Plaintiffs corresponded further with counsel for Defendants via electronic mail in an attempt to identify the steps that counsel for Defendants would take to satisfy Plaintiffs' discovery requests. Counsel for Defendants did not provide the discovery responses necessary to cure the deficiencies by October 28, 2019 at 4:30 p.m., and the parties were unable to reach a resolution.

_____/s/ Cary J. Hansel_____
Cary J. Hansel