**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JEFF HULBERT, *et al.*, | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil No: 1:18-CV-00461 SAG |
| SGT. BRIAN T. POPE, *et al.*, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**RESPONSE IN OPPOSITON
TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT ORDER
QUASHING SUBPOENA AND GRANTING PROTECTIVE ORDER**

Lieutenant Governor of Maryland, Boyd K. Rutherford, through counsel, submits this Response in Opposition to Plaintiffs' Motion for Reconsideration of the Court's Order Quashing Subpoena and Granting Protective Order and states as follows:

**INTRODUCTION**

Plaintiffs' request for the Court to reconsider its November 6, 2019 order (ECF 43) barring the deposition of Lt. Gov. Rutherford should be denied.  First, the motion is untimely because discovery in this case closed on January 31, 2020, the same day plaintiffs filed their motion.  Second, plaintiffs have already exhausted the 10 depositions they are entitled to take under Rule 30 and they failed to timely seek leave of Court for additional depositions.  Third, plaintiffs have not demonstrated any change in circumstances since the Court's previous ruling that plaintiffs had failed to meet their burden of showing that the Lt. Governor had relevant information or the existence of

"extraordinary circumstances" to justify a deposition of a high-ranking constitutional officer.

Lt. Gov. Rutherford is not a party to this case, nor is the state of Maryland. This is a case brought against two individual officers of the Maryland Capitol Police. It is the conduct of those two officers that is at issue in this case, not the conduct of the Lt. Governor. As shown below, Lt. Governor Rutherford has no information relevant to the claims against the two defendant officers. Accordingly, plaintiffs' motion should be denied.

## ARGUMENT

### I. PLAINTIFFS' MOTION IS UNTIMELY BECAUSE DISCOVERY IS CLOSED.

Pursuant to the amended Scheduling Order in this case, discovery closed on January 31, 2020. (ECF 46.) Plaintiffs waited until the last day of discovery to seek reconsideration of the Court's prior November 6, 2019 order granting Lt. Gov. Rutherford's motion to quash and for a protective order.[1] (ECF 43.) This violates the Court's discovery guidelines, which requires that discovery disputes be raised with the Court *promptly*. Appendix A to Local Rules, Guideline 1(f) (unresolved discovery

---

[1] Moreover, even though Lt. Gov. Rutherford is represented by counsel in this case, plaintiffs' counsel made no attempt to contact the Lt. Governor's counsel about the proposed deposition until after filing the instant motion for reconsideration. Plaintiffs' counsel met with counsel for defendants on January 30, 2020 to discuss discovery issues. (ECF 52 at 12, n.1.) This meeting did not include the undersigned counsel for Lt. Gov. Rutherford, who was in the midst of a two-week jury trial at the time.

disputes should be "brought to the Court's attention promptly" and that failure to do so may result in a determination "that the dispute must be rejected as untimely"). In addition, plaintiffs have already exhausted the 10 depositions they were entitled to take under Rule 30(a)(2)(A)(i) without leave of Court. Plaintiffs have offered no justification for their failure to seek leave of Court for the right to take additional depositions prior to the discovery deadline. Accordingly, plaintiffs' motion should be denied.

## II. PLAINTIFFS HAVE NOT MET THEIR BURDEN OF SHOWING THAT THE LT. GOVERNOR HAS RELEVANT INFORMATION.

Even plaintiffs' motion were timely, it should still be denied. This case stems from the response by two individual members of the Maryland Capitol Police to a sidewalk demonstration by plaintiffs near Lawyer's Mall in Annapolis in 2018, which resulted in plaintiffs' arrests and detention for 90 minutes.

In October, 2019, while discovery in this case was still open, Plaintiffs sought to depose the Lt. Governor based on an audio recording of a telephone call to a Maryland Capitol Police dispatcher from the Governor's mansion on February 5, 2018, the day of the plaintiffs' arrests. (ECF 37 at 1.) In that call, a state police officer from "the mansion" stated that the Lt. Governor was going to be walking by the area in which protestors were located and that the unidentified caller did not want the protesters to "give him a bunch of stuff."

At the time plaintiffs sought to depose Lt. Gov. Rutherford in 2019, they argued that they needed the identity of the state police officer who made this call. Plaintiffs cited their

3

lack of knowledge of the identity of the caller as the primary reason plaintiffs that they needed to depose the Lt. Governor. (ECF 37 at 14-16.) However, this rationale no longer applies.

Plaintiffs now know the identity of the caller -- State Police Corporal Ryan Bitter -- and took his deposition more than two months ago. (ECF 52 at 3-5) In addition, plaintiffs have deposed the two other state police officers who worked on the Lt. Governor's executive protection team on the day in question, Trooper Joseph Walder, Jr. and Sargent Kevin M. Roby. (ECF 52 at 6-7.) Despite dozens of questions from plaintiffs' counsel, *none* of these state police witnesses testified that Lt. Governor Rutherford instructed them to call the Maryland Capitol Police about the protestors on February 5, 2018. (ECF 52.)

Despite the fact that discovery is now closed, and despite having deposed the state police officer who made the February 5, 2018 phone call (Corporal Bitter), the two officers who worked on the Lt. Governor's executive protection team that day (Trooper Walder and Sargent Roby), plaintiffs are still not satisfied. They argue that they need to depose the Lt. Governor because neither Trooper Walder nor Sargent Roby could recall who told them to direct Corporal Bitter to call the Maryland Capitol Police. (ECF 52 at 14.) Plaintiffs assert that the "only person who could know why the directive was made on the evening of February 5, 2018 is Lt. Governor Rutherford himself." (ECF 52 at 14.)

4

This is nothing but a wild goose chase.  There is *no evidence* in the record that Lt. Governor Rutherford instructed anyone to contact the Maryland Capitol Police about the protestors on February 5, 2018.  Indeed, the undisputed evidence demonstrates that the opposite is true.  It is undisputed that Lt. Gov. Rutherford did not "instruct, direct or encourage" anyone on his staff or his state police executive protection team to contact the Maryland Capitol Police to move or arrest any protesters in Annapolis on February 5, 2018.  Declaration of Lt. Gov. Rutherford, attached hereto as Exhibit 1 ("Ex. 1.").  It is further undisputed that the Lt. Governor did not instruct, direct or encourage anyone on his staff or his state police executive protection team to take any action to prevent him from interacting with protestors in Annapolis on February 5, 2018. (*Id.*)  Nor did he direct that the Maryland Capitol Police interact with protestors that day. (*Id.*)  Lt. Gov. Rutherford has no recollection of discussing any protesters with anyone on February 5, 2018, and was not aware on February 5, 2018 that the Maryland Capitol Police would be made aware of the presence of protesters who were picketing in Annapolis that day. (*Id.*)  Therefore, he has no information that is relevant to plaintiffs' claims in this case.

Plaintiffs' motion includes a list of 14 relevant "issues" about which that they contend Lt. Governor may have relevant information. (ECF at 16-17.)  The Lt. Governor's declaration makes clear that he lacks information about many of these topics, and the remaining topics were either covered by other witnesses who have already been deposed or are not relevant.  The declaration explicitly states that the Lt. Governor did not direct

5

the Maryland Capitol Police to interact with protesters on February 5, 2018. (Ex. 1, ¶ 6.) This covers items number 1, 2 and 10 in plaintiffs' list. The declaration states that the Lt. Governor has no recollection of discussing any protesters with anyone on February 5, 2018. This covers items 3, 4, 5, 9 and 11. Items 6, 7 and 8 cover information that plaintiffs already obtained from other witnesses, namely officers Bitter, Walder and Roby. The remaining items, 12, 13 and 14, relate to other protests involving plaintiffs and "standing orders" or policies, which have no relevance in this case and which could have been obtained in discovery by other means.

In light of Lt. Gov. Rutherford's lack of relevant knowledge, requiring him to submit to a deposition in this case would be unduly burdensome. This Court has recognized that "the indiscriminate depositions of high-ranking government officials would be unduly burdensome upon said officials and likely discourage them from accepting positions as public servants." *United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-1521, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002) (citing *United States v. Morgan*, 313 U.S. 409 (1941) as "creat[ing] an exception" to general rules of discovery "as it applies to high-ranking officials holding public office").

Thus, "courts will require [a] high-ranking official submit to deposition in litigation not specifically directed at his conduct if: 1) extraordinary circumstances are shown; or 2) the official is personally involved in a material way." *Wal-Mart Stores*, 2002 WL 562301, at *3; *see also In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) ("It is well

6

established that high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent 'extraordinary circumstances.'"); *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (holding that "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means"); *Bogan*, 489 F.3d at 423 (same); *In re United States (Holder)*, 197 F.3d 310, 316 (8th Cir. 1999) (requiring exceptional circumstances); *Buono v. City of Newark*, 249 F.R.D. 469, 470 (D.N.J. 2008) ("Absent extraordinary circumstances, good cause exists to preclude the deposition of a high level government official because there is a public policy interest in ensuring that high level government officials are permitted to perform their official tasks without disruption or diversion.")

In the instant case, plaintiffs have not shown extraordinary circumstances or that Lt. Gov. Rutherford was "personally involved in a material way" in the decision to arrest plaintiffs on February 5, 2018. To the contrary, it is undisputed that Lt. Gov. Rutherford (1) was not a participant in the February 5, 2018 telephone call to the Maryland Capitol Police; (2) did not request that the call be made; and (3) did not direct that Maryland Capital Police interact with protestors in Annapolis that day. (Ex. 1.)

This Court should deny plaintiff's motion to reconsider its prior ruling quashing the subpoena and issuing a protective order to protect Lt. Governor Rutherford from the undue burden that would arise from taking time away from his official duties to be deposed in this case, in which he is not a party and has not been accused of any wrongdoing. Fed. R. Civ. P. 26(c)(1), 45(d)(3)(A)(iv).

### III. ANY DEPOSITION OF THE LT. GOVERNOR SHOULD BE LIMITED TO ONE HOUR.

Finally, to the extent the Court concludes that plaintiffs are entitled to depose Lt. Gov. Rutherford, any such deposition should be limited to one hour. Plaintiffs' counsel has taken the position that the deposition should be up to four hours. This is unreasonable given the Lt. Governor's lack of relevant knowledge. Furthermore, plaintiffs' counsel spent less than an hour deposing Sargent Roby, less than two hours deposing Trooper Walder and less than two-and-a-half hours deposing Corporal Bitter. Accordingly, there is no justification for a four-hour deposition of the Lt. Governor, who has no knowledge about the events at issue, when plaintiffs spent significantly less time deposing the police officers who were involved.

WHEREFORE, for the reasons stated herein, Lt. Governor Rutherford requests that plaintiffs' Motion for Reconsideration of the Court's Order Quashing Subpoena and Granting Protective Order be denied or, in the alternative, that any deposition of the Lt. Governor be limited to one hour.

        Respectfully submitted,

        BRIAN E. FROSH

        __/s/ *Robert A. Scott*_____
        ROBERT A. SCOTT (Bar NO. 24613)
        Assistant Attorney General
        Office of the Attorney General
        200 Saint Paul Place, 20th Floor
        Baltimore, Maryland 21202
        rscott@oag.state.md.us
        (410) 576-7055; (410) 576-6955 (fax)

Dated:  February 14, 2020        Attorney for Lt. Governor Boyd Rutherford

## CERTIFICATE OF SERVICE

I certify that on this 14th day of February, 2020, the foregoing Response was served on all parties or their counsel of record through the CM/ECF system.

>   __/s/__*Robert A. Scott*_____
>   Robert A. Scott (Bar NO. 24613)