

**DEMONSTRATIONS, RALLIES AND PRESS CONFERENCES**

**Directive: 12 – 105**

Date of Issue: July 2013      Amends/Cancels: Chapter XIII Sec 3

## I. PURPOSE

The purpose of this Directive is to establish policies and procedures in regards to demonstrations, rallies, and press conferences held within the Department of General Services Maryland Capitol Police (DGS-MCP) jurisdiction.

## II. POLICY

The Department of General Services Maryland Capitol Police will take all reasonable and appropriate steps to insure that demonstrations, rallies and press conferences held within our jurisdiction will be conducted in a lawful manner and in conformity with all rules and regulations. DGS-MCP will also coordinate with allied agencies and other components of state government to achieve this objective. The Detachment Commander will be responsible for the planning, coordinating and execution of law enforcement operations with respect to these events.

## III. DEFINITIONS

A. **Demonstration** – Activities such as parading, picketing, speech making, holding of vigils, sit-ins, or other expressive conduct that conveys a message supporting or opposing a point of view, or has the intent, effect or propensity to attract a crowd or onlookers, but does not include merely wearing tee shirts, buttons, or other similar articles of apparel that convey a message.

B. **Rally** – A gathering of persons intending to incite or inspire enthusiasm for a cause.

C. **Press conference** – A small group of people gathered with the press to give a short statement to the press and not involving any of the activities defined under the term demonstration.

D. **Special events** – Other gatherings that may occur from time to time that have been approved by the appropriate authority.

## IV. PROCEDURES

A. Approval Process:

1. Press Conferences, demonstrations and rallies on State property require prior written approval (Permit) from the Department of General Services Maryland Capitol Police Chief (DGS-MCP) or his designee.

EXHIBIT A

0003

2. Individuals or groups wishing to hold press conferences, demonstrations or rallies must apply in writing at least two days in advance for the permit unless extraordinary circumstances prevent the applications.

3. A pre-rally walk through will be required with the Chief of Police or his designee prior to receiving written approval. Applicants may be asked to provide an event agenda prior to or at the walk through. An event coordinator must be designated who will be responsible for every aspect of the event. The event coordinator must also identify all individuals assisting with the event.

4. Approved events may only occur in the area designated in the Permit. In the event of an emergency such as a major thunderstorm or extreme heat, access to suitable alternate area may be granted. Notwithstanding the above, use of the State House, State House steps and grounds is not permitted as it is subject to the procedural rules of the Senate and House of Delegates.

B. General Rules:

1. Events can commence no earlier than 9 a.m. or be scheduled to start after 8 p.m. All events must be concluded by 9 p.m. except when sessions of the Senate or House of Delegates run beyond 9 p.m.

2. Events are limited to two hours. This includes on-site preparation time for the event.

3. The event coordinator(s) must wear or other identifying insignia and identify themselves to DGS-MCP prior to the start of the event.

4. The event coordinator is responsible for advising the demonstrators on compliance with all applicable laws and regulations and ensuring the designated area is left in a clean and orderly state.

5. Detachment Commanders or his designee will coordinate event activities with applicant.

6. Equipment for the event must be unloaded in the designated area. Designated emergency lanes shall not be obstructed.

7. Use of State of Maryland electrical outlets and other power sources is not permitted.

8. Gasoline generators are not allowed on State property.

9. Battery powered public address systems are authorized.

10. Minimal sound amplification may be used during the press conference/demonstration/rally. However, sound amplification may not conflict with local ordinance(s) which prohibit noise from exceeding a distance of fifty (50) feet from the source.

11. Live bands or musicians are not permitted.

12. Staging and use of canopies/tents are not permitted.

13. The event coordinator is responsible for ensuring the area is left in a clean and orderly state upon completion of the event.

14. No vehicles are allowed in the Lawyer's Mall area at any time before, during or after the event.

C. Regulations

1. "Signs and placards are permitted, but signs and placards mounted on sticks and poles are not permitted." COMAR 04.05.02.02 (I).

2. "An individual may not have a firearm in the individual's possession within 1,000 feet of a demonstration on the property." COMAR 04.05.02.02 (J).

3. "An individual or group may not willfully disrupt or interfere with, or attempt to disrupt or interfere with:

   a) A session of the General Assembly;
   b) The Senate or the House of Delegates;
   c) Any of the Senate's or House of Delegates' committees;
   d) An officer, employee, or staff member of the General Assembly; or
   e) A member of the Senate or House of Delegates in the member's performance of any official function."   COMAR 04.05.02.03(A)

4. "An individual may not willfully picket in a building where:

   a) The Senate or House of Delegates has a chamber;
   b) A member of the General Assembly has an office;
   c) A committee of the General Assembly or the House of Delegates has an office."   COMAR 04.05.02.03(B)

5. No regulations prohibit "citizens and small groups of citizens from communicating with the General Assembly in a reasonable and orderly manner, including delivery of handbills, pamphlets, letters, and small symbolic objects to members or members' offices."   COMAR 04.05.02.04

6. Vehicles circling the vicinity of the approved event are subject to all applicable laws, including but not limited to, Md. Code Ann., Transportation Article, §21-1122.

D. Detachment Commander Responsibilities

1. Detachment Commanders will prepare a special order for each event and ensure that it is distributed to all affected DGS personnel.

2. Detachment commanders will adjust their schedules to make sure that they are present and on the scene of any demonstration, rally, or other special event that is controversial or expected to generate strong emotions.

3. Before the event begins, one police officer will be assigned and notified of the task of completing and submitting an incident report documenting the event. Any problems, special situations or other noteworthy details will be included in the report.

E. Demonstrating on Public Property

1. The First Amendment protects free speech from infringement by the government. Assembly is generally permissible in most public areas, such as public parks, public streets and sidewalks, and outside public buildings. These locations are commonly known as public forums, which are generally defined as areas that can be used for the communication of any and all views on political and social issues.

2. There are three basic types of public forums:

    (a) A traditional public forum is any area historically dedicated to public assembly and protest, such as public streets, public parks and public sidewalks.
    (b) A limited public forum is public property that, while not typically dedicated to public assembly, has been open to expressive activity by particular categories of people or on particular subjects. Examples of limited public forums would be university meeting rooms open for use by student groups or a city auditorium open for theatrical performances.
    (c) A non-public forum is public property that is not a traditional public expression. Examples of non-public forums include prisons and military bases (more information below). The government can severely restrict public expression in a non-public forum.

3. The First Amendment does not regulate the activities of private individuals, business or organizations. Citizens do not have a constitutional right to speech, assembly or protest while on private property.

4. Restrictions on the use of public forum.

    (a) Depending on the specific public location and the government's interest in ensuring safety and order, restrictions governing the use of public property for assembly and protest may apply. The following are some locations-specific regulations to consider when planning protest activities.

        1. Public sidewalks: Demonstrating groups should leave room for passer-by and should not block the flow of pedestrian traffic. If leafleting, demonstrators should not force passer-by to accept leaflets or harass individuals who refuse leaflets.

        2. Public Streets: Any march on the public street is typically considered a parade; therefore the location, time and duration of the march are subject to regulation by the city officials to prevent traffic problems. Marchers may be expected to obey traffic laws (such as red light) during the march.

3. <u>Lobbies of public buildings</u>: It is more difficult to obtain access to the inside of a public building than it is to obtain access to a street or sidewalk outside. However, if some non-government-sponsored expressive activities are permitted in the lobby, then similar activities by others may not be prohibited based on the content of the expression. But if no activities are permitted, then it is unlikely that a rally or demonstration would be allowed inside.

4. <u>Other types of public property</u>: Some types of public property are non-traditional public forums and therefore have special restrictions on free speech. For example, protests are prohibited on <u>military bases</u>, even if those protesting are in the armed services. Similarly, protests on <u>jail or prison property</u> can be restricted for safety and security reasons. <u>Post offices</u> do not allow flyers to be posted inside the building and do not allow partisan political activity inside the building. However, leafleting and other protest activities are permitted on the public street or sidewalk outside. Demonstrations may be prohibited in the immediate vicinity of <u>courthouses.</u>

F. The Right to Free Expression

1. The First Amendment guarantees free expression by protecting the right to freedom of speech, freedom of the press, and freedom of assembly and petition. The courts also have ruled that the First Amendment protects the freedom of association, which is implied by the other freedom listed above.

2. Free expression encompasses all forms of speech, from spoken and written word, to T-shirt slogans and black armbands. To rallies and protest signs, to organizational memberships. The First Amendment protects free expression from infringement by federal, state and local governments.

3. Restrictions on free expression.

    (a) The courts have consistently ruled that while the government may not restrict the actual <u>*content*</u> of speech, it may restrict the <u>*time, place, and manner*</u> of speech. For example, a municipality cannot permit members of only one political party to hold rallies on the public streets. This would be restricting speech based on content. But the government may prohibit political rallies from taking place at unusual hours or from blocking pedestrian or vehicle traffic. This would be restricting only the time, place and manner of speech.

    (b) The courts have generally found time, place and manner restrictions to be permissible because such regulations serve to ensure the safety and order of the community at large. However, it is important to note that in order to be constitutional, time, place and manner restrictions must be content-neutral, meaning they must apply to everyone regardless of the opinion being expressed.

4. Expression not protected by the First Amendment.

   (a) The courts have recognized several types of speech that do not fall within First Amendment guarantees:

      1. In 1919, Supreme Court ruled in <u>Schenck v. U.S.</u> (249 U.S. 47) that the First Amendment does not protect the speech that creates a "clear and present danger" (such as "shouting fire in a theatre").

      2. In its 1942 decision in <u>Chaplinsky v. New Hampshire</u> (315 U.S. 568), the Supreme Court ruled that speech that incites violence or directly encourages others to commit a crime ("fighting words") is a threat to the public safety and is therefore not protected by the First Amendment.

      3. In 1973, the Supreme Court found in <u>Miller v. California</u> (413 U.S. 568) that the First Amendment does not protect "obscene" material. The courts established the "SLAPS" test for determining obscenity: speech is obscene if "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." However, obscenity remains difficult to define – as Supreme Court Justice Potter Stewart once said: "I know it when I see it."

      4. The courts have ruled that defamation – a known false statement about a person or an organization intended to harm the reputation of that person or organization – is not protected by the First Amendment. Defamation in writing is <u>libel</u>, and defamation through the spoken word is <u>slander.</u>