# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEFF HULBERT, *et al.*, | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil No: 1:18-CV-00461 SAG |
| SGT. BRIAN T. POPE, *et al.*, | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## OBJECTIONS AND RESPONSES TO WRITTEN DEPOSITION QUESTIONS

Lieutenant Governor of Maryland, Boyd K. Rutherford, submits these objections and responses to the written deposition questions submitted by plaintiffs:

1) Please describe, including the date and identities of all persons involved, each time, during the period when you have held political office, that you have ever directly or indirectly encouraged, suggested, ordered, asked or directed anyone to, either personally or through others, intervene or interact with picketers or protesters or to direct intervention or interaction with picketers or protesters.

**OBJECTION:** This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case as it requests information about statements made over a 13-year period.

**RESPONSE:** Without waiving my objections, I state: In the course of my professional career, I have held public office, cumulatively, for over 13 years. During my years in public service I cannot possibly recall each and every communication or conversation that I may have had during the span of 13 years.

To the best of my recollection, during the time I have held political office, I have not directly or indirectly encouraged, suggested, ordered, asked, or directed anyone to, either personally or through others, intervene or interact with picketers or protesters.

EXHIBIT BB

2)   Please describe, including the date and identities of all persons involved, each time, during the period when you have held political office, that you have ever witnessed someone else directly or indirectly encourage, suggest, order, ask or direct anyone to, either personally or through others, intervene or interact with picketers or protesters or to direct intervention or interaction with picketers or protesters.

**OBJECTION:** **This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case as it requests highly specific information about statements made over a 13-year period.**

**RESPONSE:** **Without waiving my objections, I state: In the course of my professional career, I have held public office, cumulatively, for over 13 years. During my years in public service I cannot possibly recall each and every communication or conversation that I may have had during the span of 13 years.**

**To the best of my recollection, during the time I have held political office, I have not witnessed anyone else directly or indirectly encourage, suggest, order, ask, or direct anyone to, either personally or through others, intervene or interact with picketers or protesters.**

3)   Please describe, including the date and identities of all persons involved, each time, during the period when you have held political office, that you have ever directly or indirectly encouraged, suggested, ordered, asked or directed anyone to either personally or through others, move a member or members of the public or interact with a member or members of the public with the intention of having him, her or them move or directing him, her or them to move.

**OBJECTION:** **This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case as it requests information about statements made over a 13-year period.**

**RESPONSE:** **Without waiving my objections, I state: In the course of my professional career, I have held public office, cumulatively, for over 13 years. During my years in public service I cannot possibly recall each and every communication or conversation that I may have had during the span of 13 years.**

**To the best of my recollection, during the time I have held political office, I have not directly or indirectly encouraged, suggested, ordered, asked, or directed anyone to, either personally or through others, move a member or members of the public or interact with a member or members of the public with the intention of**

2

having him, her, or them move or directing him, her or them to move.

4)      Please describe, including the date and identities of all persons involved, each time, during the period when you have held political office, you have indicated a desire not to interact with members of the public, picketers or protestors in Annapolis, Maryland.

**OBJECTION:** This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case as it requests information about statements made over a 13-year period.

**RESPONSE:** Without waiving my objections, I state: In the course of my professional career, I have held public office, cumulatively, for over 13 years. During my years in public service I cannot possibly recall each and every communication or conversation that I may have had during the span of 13 years.

To the best of my recollection, during the time I have held political office, I have not indicated a desire to not interact with members of the public, picketers, or protestors in Annapolis, Maryland.

5)      Please state all knowledge you have, whether direct or learned through others (with the exception of your attorneys), related to the events of February and March, 2018 involving Jeff and/or Kevin Hulbert and/or Patriot Picket and/or police interaction with and the arrests of, charging of and dismissal of charges against picketers, including any investigation of these events, identifying all sources of your knowledge.

**OBJECTION:** This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case.

**RESPONSE:** Without waiving my objections, I state: To the best of my recollection, I became aware of the events of February and March 2018 involving the Jeff and/or Kevin Hulbert and/or Patriot Picket from various news outlets during the day or days following the incident. After the incident, it is probable that a member of my staff or a senior staff member gave a brief overview of the events that occurred, as part of a standard update given to me regarding current events. However, as of today, I do not have a specific recollection of such a briefing.

Based on the media coverage and review of the complaint, my understanding is that an officer had a confrontation with protesters that escalated to an arrest. It is my understanding that the charges were dismissed and the protester(s) sued the state.

6) Excluding communications with your lawyer(s), please recount all communications you have had, listing the date, parties and content, related to the events of February and March, 2018 involving Jeff and/or Kevin Hulbert and/or Patriot Picket and/or police interaction with and the arrests of, charging of and dismissal of charges against picketers, including any investigation of these events, specifying all sources of your knowledge.

**OBJECTION: This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case.**

**RESPONSE: Without waiving my objections, I state: Given that these events took place more than two years ago, I do not have a specific recollection of each and every communication I may have had with respect to the incident at issue.**

**Based on my calendar entries for this period, I had a regularly scheduled weekly meeting with the Chief of Staff on Thursday, February 8, 2018, followed by a Senior Staff meeting on Friday, February 9, 2018. It is possible that at either one or both of these meetings the events related to the Jeff and/or Kevin Hulbert and/or Patriot Picket would have been communicated. However, I do not have a specific recollection of what, if anything, was discussed during these meetings concerning the events of February and March, 2018 involving Jeff and/or Kevin Hulbert and/or Patriot Picket and/or police interaction with and the arrests of, charging of and dismissal of charges against picketers, including any investigation of those events.**

**Additionally, based on calendar entries, on or around September 9, 2019 I had communications with Allison Mayer, deputy chief of staff, regarding the subpoena for my deposition. It was brought to my attention that the plaintiffs sought to depose me. Allison Mayer briefly recounted the events that led to the current suit and how I am allegedly involved, since I was not immediately familiar with the issue.**

7) Please describe how you first became aware of Jeff and/or Kevin Hulbert and/or Patriot Picket.

**RESPONSE: To the best of my recollection, I first became aware of Jeff and Kevin Hulbert and/or Patriot Picket when I saw the media coverage following the events of February and March 2018.**

8) Excluding communications with your lawyer(s), please recount all communications you have made while holding political office related to protesters, picketers, Jeff and/or Kevin Hulbert, Patriot Picket, your views on firearms, the Second

4

Amendment, firearm owners and/or second amendment supporters.

**OBJECTION:** This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case as it requests information about statements made over a 13-year period.

**RESPONSE:** Without waiving my objections, I state: In the course of my professional career, I have held public office, cumulatively, for over 13 years. During my years in public service I cannot possibly recall each and every communication or conversation that I may have had during the span of 13 years. It is impossible for me to answer this question with the amount of specificity requested. I can state with confidence that I have never communicated anything disparaging about Jeff and/or Kevin Hulbert and/or Patriot Picket.

To the best of my recollection, I have always supported the first amendment rights of protestors and picketers. During the Maryland legislative session it is common for protestors or picketers to gather on Lawyers Mall in Annapolis. Sometimes I may inquire what the protested issue is, briefly read signs, or listen to a chant.

9) Please describe your activities on February 5, 2018 from the hours of 5 p.m. to 10 p.m., including who was in your presence, where you were, your movements, and whether you heard or saw anything related to protesters, picketers, Jeff and/or Kevin Hulbert, Patriot Picket or an interaction near Lawyer's Mall in Annapolis, Maryland involving the police.

**OBJECTION:** This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case.

**RESPONSE:** Without waiving my objections, I state: Based on my calendar entries for the period, as I do not recall that date with any specificity, from the hours of 5 p.m. to 10 p.m. the following encompasses my activities on February 5, 2018 with approximate corresponding times:

5 – 6 p.m. – Monthly Interoffice meeting with executive staff members in my office

6 – 7 p.m. – Office time

7 p.m. – Walked from the State House to the Senate Office Building. Staff

members Aiden Galloway and Courtney Highsmith, and one member of the executive detail accompanied me on the walk. Based on usual practices, the path taken from the State House likely was across Lawyer's Mall, across College Ave, to the Senate Office Building. I cannot recall with specificity the night in question, but if there were any protest or rally occurring on Lawyers Mall, I would have walked by it. Given that during the legislative session there are often protest/events/rallies taking place, it would not have been out of the ordinary.

7 – 7:30 p.m. – Attended District 34 + 35 Night at the Miller Senate Office Building West with staff members Aiden Galloway, Courtney Highsmith, photographer, and executive detail. I cannot recall exactly which photographer or members of the executive detail accompanied me that evening.

7:30 – 8:30 p.m. – Travel to Baltimore

8:30 – 10 p.m. – At Morgan State to attend the Howard vs. Morgan basketball game.

During this entire timeline, to the best of my recollection, I do not recall witnessing anything related to protesters and picketers or any interactions with police.

10) Please describe what route you took when leaving the Miller Senate Office building by foot on February 5, 2018, including how the route was chosen and who communicated it to you.

**OBJECTION:** This question is overly broad, ambiguous and seeks information that is not relevant or proportionate to the needs of the case.

**RESPONSE:** Without waiving my objections, I state: I do not have a specific recollection of leaving the Miller Senate Office Building that evening. Based on usual practice, I likely exited the building through the back entrance through the kitchen/staging area to a small parking lot off of Northwest St. The driver from my Executive Protection detail typically parks in the lot and I get into the car to travel to the next destination.

I do not specifically recall how the route was chosen or how it was communicated to me. Typically, either a member of my staff or the executive detail will direct the route to exit an event. For many evening events that I attend in the

Miller Senate Office building, the executive detail will bring the car to the back of the building, enabling us to leave directly from the event to continue as quickly as possible to my next event or return to my residence.

I, Boyd K. Rutherford, hereby affirm under the penalties of perjury that the foregoing responses are true to the best of my knowledge, information and belief.

April 10, 2020
Date

Signature

Respectfully submitted,

BRIAN E. FROSH

__/s/ *Robert A. Scott*_____
ROBERT A. SCOTT (Bar NO. 24613)
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
(410) 576-7055; (410) 576-6955 (fax)

Dated: April 10, 2020         Attorney for Lt. Governor Boyd Rutherford

7

## CERTIFICATE OF SERVICE

I certify that on this 10th day of April, 2020, the foregoing Objections and Responses were served by electronic mail on:

>Cary J. Hansel
>HANSEL LAW, PC
>2514 N. Charles Street
>Baltimore, Maryland 21218
>*Counsel for Plaintiffs*

>/s/ *Robert A. Scott*
>Robert A. Scott (Bar No. 24613)