IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| JEFF HULBERT, *et al.* | * | |
| Plaintiffs | * | |
| v. | * | Case No. 1:18-CV-00461-SAG |
| SGT. BRIAN T. POPE, *et al.* | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT SGT. BRIAN T. POPE'S MOTION FOR RECONSIDERATION**

Defendant Sgt. Brian T. Pope, by undersigned counsel, and pursuant to Fed. R. Civ. P. 54(b) and Local Rule 105.10, hereby moves for reconsideration. This Court reconsiders its interlocutory orders when "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Blanch v. Chubb & Sons, Inc.*, 124 F.Supp.3d 622, 629 (D. Md. 2015). Sgt. Pope is mindful that the Court generally disfavors motions for reconsideration, but believes in good faith that there are important issues of fact and law to merit such a motion here.

**I.   Sgt. Pope Asks This Court to Reconsider Its Ruling on Whether His Orders Were Narrowly-Tailored to Serve a Significant Government Interest.**

In analyzing the time, place, and manner restriction, this Court was unable to grant summary judgment based on one narrow issue. This Court held that the orders to move were content neutral and left open amble alternative channels to continue First Amendment activity. ECF 88 at 10-13. This Court also agreed that there is a significant government interest when it held "[t]here is no doubt that the state has a significant interest 'in maintaining the safety, order,

and accessibility of its streets and sidewalks.'" ECF 88 at 13 (quoting *Ross v. Early*, 746 F.3d 546, 555 (4th Cir. 2014)). This Court, however, concluded that "there are factual disputes requiring jury resolution as to whether a legitimate government interest was served by the police action." ECF 88 at 15. In other words, this Court concluded that a jury needs to determine whether Sgt. Pope's orders served the government's safety interest.

In this Court's opinion, it cited to several of the safety concerns that existed on February 5, 2018, including that "the Hulbert brothers and approximately six other people were holding large signs somewhere in the middle of a fifteen- and one-half-foot walkway in front of Lawyers' Mall in downtown Annapolis. It was dark, and the Maryland legislative session was expected to convene within a few hours." ECF 88 at 15. This Court took significant issue, however, with a dispute as to whether Patriot Picket members used the crosswalks and noted that "there is a factual dispute as to whether any of the Patriot Picket members were in the street or crosswalks prior to Sgt. Pope ordering the group to move." ECF 88 at 15-17. Sgt. Pope did not anticipate that this would be as significant an issue during briefing of the motion for summary judgment. Attached to this motion for reconsideration is surveillance footage depicting the Patriot Picket demonstration before and during the arrests, which shows that the group regularly walked across the streets with their signs before the arrests. *See* Exhibit A: Surveillance Footage of Lawyers' Mall on February 5, 2018.[1] The surveillance video resolves this factual dispute.

Moreover, this Court distinguished the pedestrians who had previously been struck by vehicles from the facts of this case. The prior incidents "occurred during daylight hours in June,

---

[1] Counsel has been having technical difficulties preparing a link or shared drive to serve as the method of citing to the video, similar to how the audio of the call to the governor's mansion was included in defendants' reply memorandum. ECF 87 at 6. As a result of ongoing technical difficulties—and that today is the due date for the filing of a motion for reconsideration—the video will be put onto a DVD on Monday for filing and service.

not, as here, when the Maryland Legislature was in session." ECF 88 at 17. The government is "entitled to advance its interests by arguments based on appeals to common sense of logic . . . particularly where, as here, the burden on speech is relatively small." *Ross*, 746 F.3d at 556. Common sense presumes that the intersection was more dangerous during the legislative session when more people are in the area and later in the evening when it is dark. This is another factual finding in support of the fact that Sgt. Pope's orders to move were in furtherance of safety concerns. As stated in the case report prepared after the arrests, the assessed safety concerns included:

- Time and Location of this particular demonstration

- There have been several pedestrians struck by vehicles at this location

- Visibility was limited, due to darkness. Tower lights are used to increase visibility

- Maryland Legislative Session was to convene at 2000 hours, and there were several pedestrians in the area, using the crosswalk.

- The group was using signs, limiting pedestrian flow on the sidewalks, distracting drivers, causing an unsafe environment.

ECF 76-14 (case report submitted the day after the arrests and a clearer representation of Sgt. Pope's assessment than his deposition one and a half years later). Among other things, Sgt. Pope's case report also fits into the public records exception to the hearsay rule. Fed. R. Civ. P. 803(8); *cf.* Md. Rule 5-803(b)(8) (Maryland Rule of Evidence, which is modeled after the federal rule). Records that fit this exception are not only admissible, but they carry a presumption of reliability. *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir. 1984); *see also In re H.R.*, 238 Md. App. 374, 405 (2018) (holding that public records "carry a 'presumption of reliability' and that the public records exception 'appropriately allows the receptions of reliable facts[.]'" (internal citation

3

omitted)).  In other words, many of the facts that this Court found are supported by Sgt. Pope's report that was prepared after the arrests, which itself carries are presumption of reliability.

The Court also noted that "Sgt. Pope repeatedly testified at his deposition that he did not see the group blocking traffic or creating any unsafe condition," *see* ECF 88 at 15, but that testimony is not inconsistent with the fact that his orders were given for safety reasons.  Sgt. Pope was reasonably of the belief—based on the evidence above and in the motion for summary judgment—that the demonstration would create a safety issue; not that it existed at that exact moment.  As the Second Circuit held, "we do not think that to avoid liability the officers needed to refrain from intervening until [plaintiff] actually impeded pedestrian traffic or caused a security issue."  *Kass v. City of New York*, 864 F.3d 200, 209 (2nd 2017).

In the memorandum opinion, this Court stated that it "appreciates that the government's burden is not particularly high in establishing that some safety concern was materially served in moving the demonstration a few feet off the sidewalk."  ECF 88 at 17.  To that end, however, this Court identified several of the safety concerns that were served by Sgt. Pope's orders in the opinion, *see* ECF 88 at 15 (it was dark, the legislative session was about to convene, and there were 8 people on a sidewalk with large signs), but this motion for reconsideration answers one more factual dispute that this Court could not resolve.  Namely, that Patriot Picket members were in the street and crosswalks for the demonstration.  Ex. A.  Sgt. Pope also identified and reiterated many of these safety concerns when he prepared the case report after the arrests, which was prepared close in time to the arrests and carries a presumption of reliability. ECF 76-14.  Sgt. Pope contends that this Court's factual findings in its memorandum opinion, resolution of the dispute about being in the street with the surveillance video, and Sgt. Pope's case report prepared soon

after the arrests are, as a matter of law, sufficient to meet the threshold of satisfying the State's burden that the orders to the Hulbert brothers furthered the government's safety interests.

> **II.    Sgt. Pope Asks This Court to Reconsider Its Ruling on Whether Sgt. Pope Had Probable Cause to Arrest.**

Closely related to the prior argument, Sgt. Pope contends that even if this Court still believes "there are factual disputes requiring jury resolution as to whether a legitimate government interest was served by the police action," *see* ECF 88 at 15, then the very nature of the remaining factual dispute should still result in Sgt. Pope being entitled to qualified immunity. Under this scenario, even if Sgt. Pope was mistaken about the lawfulness of the order, he still had probable cause to arrest. "Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). Important to this case, "[t]he test for assessing probable cause is an objective one. An officer can arrest a person subjectively believing that the individual had committed one offense when the individual had committed a completely different offense. In other words, an officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *McCormick v. State*, 211 Md. App. 261, 270 (2013) (quoting *Devenpeck v. Alford*, 543 U.S. 146 (2004)).[2]

Here, in addition to Sgt. Pope believing in good faith that he had given a lawful order, he also arrested the Hulbert brothers for obstructing sidewalks. Moreover, charges were later added—based on longstanding advice of the Anne Arundel County State's Attorney's Office—for trespass.

---

[2] This Court noted that "[w]here an officer's order is unconstitutional, 'the failure to obey a lawful order statute cannot serve as the basis for probable cause.'" ECF 88 at 23 (citation omitted). As noted in this citation, however, "the subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause," and the known facts here led to additional criminal charges, based on longstanding advice from the State's Attorney's Office and after consultation with an assistant state's attorney.

The Maryland Capitol Police contacted an assistant state's attorney for advice and he agreed with adding new changes, and he had the benefit of 20/20 hindsight. Lt. Labs is the officer who contacted the State's Attorney's Office:

Q But once the new charges were drawn up, did you see them, or before they were served, did you lay eyes on them?

A Yes.

Q So, whatever you eventually served on round two, you were aware of through (sic) you had laid eyes on?

A Yes.

Q You approved them?

A With the help of the state's attorney.

ECF 76-17; Ex. O: Labs, 74:18 – 75:5

\*   \*   \*

Q Now, once that conversation was over, what was your next awareness of involvement in the Hulberts, Patriot Picket, this incident, anything like that?

A After Donaldson brought me the correct charges, I reviewed them and, as I normally do, I, just out of common practice and what I'm used to doing is, contacting the state's attorney or assistant state's attorney and get direction, because there was a mess up here, and the Hulbert brothers already signed the ones they were issued, so I wanted to make sure I was doing it appropriately. So, I contacted the State's Attorney's Office in Annapolis, waited until somebody got back to me. I want to say Miller, Assistant State's Attorney Miller --

Q His first name is Jason, is that right, Jason Miller?

A -- yes -- got back to me, I explained the situation, I asked for direction, he said I have a year and a day to still serve the two that we want to. If I remember correctly, I may have asked him should I void the other two, and I want to say he said, "You don't need to, because wait till we go to court, that can happen." So, I said, "Thank you," and that was the rest of the conversation.

Q So, then, as I understand it, the two issued that you discussed with the State's Attorney's Office were before the second set of charges were brought?

A Yes, sir.

Q      Were the timing, meaning you called to say, "Can I recharge or add charges since they'd already signed," and he said you had a year and a day, and should you void the original ones and he said you don't need to, those were the two issues that were discussed?

A      Right, and I also discussed the proper charges, two charges on the new ones and he said they fit, they fit better, so he agreed with me.

ECF 76-17; Ex. O: Labs, 77:11 – 79:4

\*    \*    \*

Q      You described to me that you told him the new charges that were going to be added and asked for his opinion as to whether they were appropriate or not?

A      Yes.

Q      And so I'm trying to understand, how was he able to give you an opinion that they were appropriate or not since he wasn't there --

A      Got it.

Q      -- and, presumably, he didn't have any information at all about, you know, independent of what you were telling him? I'm just trying to understand.

A      No, that's okay.

So, normally, when I call state's attorneys and I get their opinions and ask questions, I give them a brief synopsis of what I'm dealing with. He knew at that time, when I told him, that two charges were done on one. He said, basically, "Don't worry about that." So, I told him about the two charges that we were going to charge, gave him a brief synopsis and he said, "That seems to fit."

ECF 76-17; Ex. O: Labs, 80:2-21.

The Supreme Court has repeatedly held that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335 (1986)). Officers are protected from claims for constitutional violations "for reasonable mistakes as to the legality of their actions." *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012) (quoting *Saucier v. Katz*, 457 U.S. 800, 818 (1982)). If

this Court believes that Sgt. Pope made a mistake, then, under the circumstances and based upon the undisputed facts, it was a reasonable mistake.

In this case, several other officers agreed with adding new charges the day after the arrests. As assistant state's attorney agreed with adding new charges the day after the arrests. *Wadkins v. Arnold*, 214 F.3d 535, 541-42 (4th Cir. 2012) (holding that when a prosecutor authorizes charges, it is a fact that weighs "heavily *toward* a finding that [the officer] is immune" and it "is compelling evidence and should appropriately be taken into account in assessing the reasonableness of [an officer's] actions.") (emphasis in original)). "[A]n officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *McCormick*, 211 Md. App. at 270. In other words, there is a difference between being wrong about whether certain conduct amounted to a criminal violation and being mistaken about which criminal violation occurred. If probable cause existed for a different violation, then the officer did have probable cause.

The facts of this arrest were sufficient to make several officers and at least one prosecutor believe that a criminal offense occurred. As a result, Sgt. Pope had probable cause to arrest and, even if he did make a mistake—either about the lawfulness of his order or the actual crime that was committed in his presence—then he made the kind of mistake for which officers are entitled to qualified immunity. Officers are protected from claims for constitutional violations "for reasonable mistakes as to the legality of their actions," *Merchant*, 677 F.3d at 661 (4th Cir. 2012), and there is no evidence that Sgt. Pope was "plainly incompetent" when he attempted to protect the public safety by moving a demonstration a few feet away. As the Supreme Court has explained, "[i]f judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 608 (1999). In the

same vein, if several officers and a prosecutor believe that the conduct for which persons were arrested was unlawful and subject to additional charges, then it is unfair to subject the arresting officer to money damages. Under this scenario, the facts establishing probable cause—even viewed in the light most favorable to plaintiffs—are not such that "every reasonable officer" (or prosecutor, for that matter) would understand that the alleged constitutional violation was established "beyond debate." If this Court believes that Sgt. Pope made a mistake, then, under the circumstances and based upon the undisputed facts, it was a reasonable mistake and he is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of defendant Sergeant Brian T. Pope.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ James N. Lewis
_____

James N. Lewis
Fed. Bar No. 30220
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jlewis@oag.state.md.us
(410) 576-7005 (telephone)
(410) 576-6955 (facsimile)

March 7, 2021                                                *Attorneys for Defendant Sgt. Brian T. Pope*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of May 2021, a copy of the foregoing Motion for Reconsideration and Proposed Order were served electronically via CM/ECF to:

Cary Johnson Hansel, III, Esquire
Federal Bar No. 14722
cary@hansellaw.com

Erienne Sutherell, Esquire
Federal Bar No. 20095
esutherell@hansellaw.com

Justin Stefanon, Esquire
Federal Bar No. 20087
jstefanon@hansellaw.com

HANSEL LAW, P.C.
2514 North Charles Street
Baltimore, Maryland 21218

*Attorneys for Plaintiffs*

John C. Fredrickson, Esquire
Federal Bar No. 02566
john.fredrickson@maryland.gov

OFFICE OF THE ATTORNEY GENERAL
Department of General Services
300 West Preston Street, Suite 608
Baltimore, Maryland 21201

*Attorneys for Former Defendant Col. Michael Wilson*

/s/ James N. Lewis
_____
James N. Lewis