## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

Kevin Hulbert, *et al*.

       *Plaintiffs*,

      v.

Sgt.  Brian Pope, *et al*.

       *Defendants*.

Civil No.: 1:18-CV-00461-SAG

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

Comes now the Plaintiff, and files the aforesaid opposition, stating as follows:

### I.   RELEVANT FACTS AND PROCEDURAL HISTORY

On February 5, 2018, Sergeant Brian T.  Pope ("Defendant Pope" or "Sgt.  Pope") issued unconstitutional orders to brothers Jeff and Kevin Hulbert ("Plaintiffs" or "the Hulberts") in violation of their first amendment rights to assembly and speech.  The Hulberts were peacefully picketing on a public sidewalk in Maryland's capital with a small group of less than ten people during a legislative session to raise awareness about certain state laws.  The group, known as Patriot Picket, had demonstrated before on numerous other Mondays during legislative sessions in the same location and manner as the day of the Hulberts' arrests.

Acting on orders given by the advance team of the Lieutenant Governor, who wanted the Lieutenant Governor to walk through the area without the picketers interacting with him, Sgt. Pope unconstitutionally ordered the picketers to move from the sidewalk, a public forum, to a grassy area called Lawyer's Mall, farther from the intended audience of their picketing.  A permit is required to demonstrate on Lawyer's Mall, and Defendant Pope was aware that Patriot Picket did not have such a permit.  When one of the Hulbert brothers remained on the public

sidewalk with a sign, he was arrested, as was another of the Hulbert brothers, who was not picketing or carrying a sign, but only filming events from a reasonable distance.

On the evening of the arrest, Defendant Pope issued a single criminal citation to each Hulbert brother.  In the citation, both Hulberts were charged with "willfully fail[ing] to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace." Md.  Code, Crim.  Law § 10-201(c)(3); ECF No.  84-3, Exhibit D at 3-4 (D.  Md.  February 11, 2021).   At his deposition, Defendant Pope openly admitted that neither of the Hulbert brothers created a disturbance to the public peace that warranted their arrests.  *See* ECF No.  84-2, Exhibit C at 82-83, 142-143 (D.  Md.  February 11, 2021).  Therefore, Defendant Pope admittedly arrested the brothers and charged them without probable cause or reasonable suspicion to believe the charged crimes had been committed.  This is a blatant and admitted violation of their constitutional rights.

Prior to arriving on the scene, Officer Pope had no information that anything unlawful was happening.  *Id* at 82-83.   Defendant Pope explicitly stated that he did not observe any activities from the Hulberts that supported the charges he levied against either of the brothers.  *Id.*  at 142-143.  When Defendant Pope first arrived at the scene, Defendant Pope did not even see anyone walking down the sidewalk in the area, much less anyone that the Hulberts were obstructing:

> Q.  When you could first see the scene of this area with your own eyes in front of Lawyers' Mall, tell me what you saw.
>
> A.  I saw the one guy there with all the signs on the ground.
>
> Q.  As you approached did that scene change, or was it still one guy and signs when you first got there?
>
> A.  It was the same when I got there.

Q.  And in your description of the scene, you didn't mention any other people. You didn't see anybody else as you an approached?

A.  No.

Q.  Nobody was walking down the sidewalk?

A.  I didn't pay attention to anybody walking down the sidewalk.

Q.  But you didn't see anyone that you recall?

A.  Not that I recall.

Q.  So when you got there, the only two people you recall on the sidewalk were yourself and Mr.  Hulbert?

A.  Right.

*Id.*  at 80-81.

Defendant Pope further testified that he was not concerned with the safety of anyone in the area, and did not see any condition that looked unsafe:

Q.  Now when you said that, did you feel safe at the moment?

A.  Yes, I did.  Safe from like danger?

Q.  Safe from anything, yeah.  You felt safe, didn't you, comfortable?

A.  Yes.

Q.  And did Mr.  Hulbert look safe when you said that?

A.  He looked safe.

Q.  And you don't remember anybody else being there?

A.  Correct.

Q.  Did any condition that you could see at that time look unsafe?

A.  Not that I could see.

*Id.*  at 82-83.   Pope left and returned shortly thereafter.

The second time that Defendant Pope saw the Hulberts and the picketers that night, he similarly did not see anyone else on the sidewalk or in the area, and the demonstration did not obstruct Defendant Pope's ability to transverse the sidewalk or obstruct any vehicular traffic:

> Q.  And when you were there within 20 feet of them, you don't recall seeing anybody else on the sidewalk other than the picketers; is that right?
>
> A.  That's correct.
>
> Q.  And were you able to freely go across or was anything they were doing affecting your ability to walk across at that point?
>
> A.  They couldn't affect my ability from where they were standing and where I was crossing.  They were up further.
>
> Q.  And there weren't any cars stopped or, the traffic was flowing freely on the road, correct?
>
> A.  I know there was nothing stopped so yes, they could go freely.

*Id.*  at 90-91.

Defendant Pope then approached the picketers and the Hulberts to ask them to move to a grassy area where it would be harder for them to be seen, called Lawyer's Mall.   Defendant Pope also knew that a permit was required to hold a demonstration at Lawyer's Mall and that the Patriot Picket did not possess such a permit.  At this point, Defendant Pope still did not see anyone else on the sidewalk and was still able to traverse the sidewalk freely and without obstruction:

> Q.  Now as you approached them, could you see anyone else on the sidewalk besides the people with pickets?
>
> A.  I wasn't paying attention.
>
> Q.  So not that you recall?
>
> A.  Not that I recall.

Q.  And you were able to approach them freely, you were able to move freely in the area?

A.  Yes.

Q.  And traffic was flowing freely?

A.  I didn't come that way.  The way I was coming from I was coming from Lawyers' Mall, so there was no traffic.

Q.  But you didn't see any traffic being impeded in any way, did you?

A.  No, not at that time.
…
Q.  And nothing that they were doing prevented you from getting where you needed to go or exercising your duties, did it?

A.  No.

*Id.* at 93-95.

Although people began to congregate and film the police officers *after* Defendant Pope initiated the arrests and called for backup, at no point prior to the arrests was either pedestrian or vehicular travel obstructed:

Q.  So when there were eight police officers responding in front of Lawyers' Mall, the police presence caused some people to stop and pull out their cameras?

A.  Probably.

Q.  And that's what it [looked] liked to you?

A.  Yes.

Q.  And prior to the presence of a police officers, you didn't see anybody stopped or filming or anything like that?

A.  No.

Q.  And prior to the presence of the eight police officers, people could freely come and go as far as you saw, you didn't see anybody stopped or couldn't get by; is that right?

A.  That's correct.

Q.  And prior to the police officers being there, you didn't observe anybody in any unsafe condition or behavior, did you?

A.  No.

…

Q.  So the officers were impeding driving traffic with their lights on with their cars stopped in the intersection when they arrived; is that right?

A.  I don't know if you would call it impeding, but they couldn't park on the sidewalk.

Q.  And prior to the arrival of the police cars that you've already described, people could come and go freely; is that right?

A.  Yes.

*Id.* at 114-117.   As Sgt.  Pope clarified:

Q.  Now the way you've described it to me prior to these arrests -- let me put it this way.  Prior to the officers' arrival, the way you described it to me, there was no disturbance or disruption of the normal business in the area by these people being there?

A.  Not at that time, no.

Q.  Prior to the officers being there?[1]

A.  Correct.

*Id.* at 129-130.

---

[1] A disorderly conduct charge cannot be based on a disruption caused by police action.  In *Diehl v. State*, 294 Md.  466 (1982), the Court of Appeals reversed a defendant's conviction for disorderly conduct where a police officer unlawfully ordered the defendant to get back in his car during a traffic stop and the defendant verbally protested the illegal order.  The commotion caused by the police action had drawn a crowd of onlookers, but the Court of Appeals found that a disturbance had not been created where "[p]eople might have begun to stop, look and listen, forming a crowd," because of the police conduct, as those individuals "probably were mere curiosity seekers." *Id*.  at 472; *see also Higginbotham v.  Brauer*, No.  CV DKC 18-1067, 2020 WL 4569520, at *4 (D.  Md.  Aug.  7, 2020) (finding that summary judgment was not appropriate where plaintiff introduced evidence that "a crowd already existed, and his actions did not draw the crowd," leading to the absence of probable cause for a disorderly conduct charge).

Indeed, Defendant Pope, a trained police officer, admitted that there was no disturbance

of the peace at all to support his arrest of the defendants:

> Q.  Did you ever observe either of the Hulberts disturbing any normal business
> that was going on there before the police arrived, before the group of eight
> officers was there?
>
> A.  What do you mean, disturb normal business?
>
> Q.  Disturbing the conduct of any normal business.
>
> A.  No.
>
> **Q.  Did you see the Hulberts disturbing the peace in any way before the eight
> officers were on the scene?**
>
> **A.  No.**
>
> **Q.  Now after the eight officers arrived, did you see the Hulberts disrupting
> normal business or disturbing the peace?**
>
> **A.  No.**

*Id.* at 142-143 (emphasis supplied).

Despite that Defendant Pope did not witness any disturbance to the peace or see the

Hulberts engaging in any criminal activity, he arrested Jeff Hulbert and criminally charged him

without probable cause in an effort to procure the group's compliance with the unlawful order to

move:

> Q.  So you believed that by arresting Jeff Hulbert you could stop the picketing on
> the sidewalk; is that right?
>
> MR.  FREDERICKSON: Objection to the form.
>
> BY MR.  HANSEL:
> Q.  Is that right?
>
> A.  Yes.
>
> Q.  And that was your goal?

7

A.  Right.  And they went into Lawyers' Mall after we placed those two under arrest.

*Id.* at 100-101.

Defendant Pope then made the decision to arrest Kevin Hulbert and charge him with disorderly conduct for filming the arrest of Jeff Hulbert, despite that Pope was aware of the right to film police.   *Id.* at 107-108.   Kevin Hulbert testified that he was 20 feet away while filming and Pope approached him to make the arrest.  ECF No.  84-1, Exhibit B at 29-31 (D.  Md. February 11, 2021).

At Defendant Pope's deposition, he was played a recording of the call that originated from the Governor's Mansion, about the presence of the Hulberts and the picketers.  After listening to the call, Defendant Pope agreed that there was no concern about public safety that justified the request, and admitted that asking picketers to move just so that the Lieutenant Governor would not have to interact with them is *not* a lawful request:

Q.  You agree with me there's no mention of safety anywhere in there, right?

A.  No.

Q.  Okay, right, which means there's no mention of safety?

A.  No.

Q.  Okay, all right.  So instead, what I heard was that the governor's mansion called your office and said that the lieutenant governor was about to walk to the senate building or from the senate building, and they didn't want the protesters to interact with the lieutenant governor; do you agree with me that that's a synopsis of what we heard?

MR.  FREDERICKSON: Objection to the form.

THE WITNESS: Yes.

BY MR.  HANSEL:
Q.  Having heard that, and with your training as a 20-plus year police officer, and given that you know people have a First Amendment right to protest, do you

agree with me that preventing people from interacting with the lieutenant governor is an inappropriate reason to ask somebody that is picketing to move?

MR.  FREDERICKSON: Objection.
MR.  McFARLAND: Objection.  Go ahead.

THE WITNESS: I guess that would be.

BY MR.  HANSEL:
Q.  And do you agree with me that if this call -- if this is the reason why people were asked to move, it's against their constitutional rights?

MR.  FREDERICKSON: Objection.
MR.  McFARLAND: Objection.  Go ahead.

THE WITNESS: It sounds like it.

ECF No.  84-2, Exhibit C at 125-127 (D.  Md.  February 11, 2021).

Defendant Pope further admitted that if he had known the full context of the call that was made, he would have acted differently and not even approached the Hulberts or Patriot Picket at all:

Q.  Had you known at the time that this was the basis or the genesis of what happened, would you have done something differently, would you have not asked them to move had you known at the time?

MR.  McFARLAND: Objection.

MR.  FREDERICKSON: Objection.

THE WITNESS: Yes.

BY MR.  HANSEL:
Q.  What would you have done differently?

A.  Based on that, that's different than what I was told.  I probably would have never went out there at all.

*Id.* at 129.

On December 16, 2020 Defendants filed a motion for summary judgment, seeking judgment in their favor on all counts.  *See* ECF No. 76 (D.  Md. December 16, 2020).  This

Court's April 22, 2021 Memorandum Opinion and accompanying Order granted in part and denied in part the Defendants' motion. ECF No. 88 (D. Md. April 22, 2021) Judgment was granted in favor of Defendant Michael Wilson on all counts, but denied as to Defendant Pope on four of the Hulbert's Claims:

> **Count I**: First Amendment Freedom of Speech – Lawful Demonstration
>
> **Count II**: First Amendment Freedom of Speech – Lawfully Filming Officers
>
> **Count III**: First Amendment Freedom of Speech – Retaliation
>
> **Count IV**: Fourth Amendment – Unconstitutional Search and Seizure

In denying summary judgment on the above counts, this Court found that there were outstanding factual issues to be resolved by a jury. *Id.* Among other reasons to justify denial of the motion, this Court declined to grant Defendant Pope qualified immunity on the basis that there were factual disputes related to multiple issues:

> "there are factual disputes requiring jury resolution as to whether a legitimate government interest was served by the police action."
>
> "there is a factual dispute as to whether any of the Patriot Picket members were in the street or crosswalks prior to Sgt. Pope ordering the group to move."
>
> "there is a genuine issue of material fact as to whether any real, non-conjectural safety issue was aided by Sgt. Pope's actions, or whether the police involvement caused the situation to become more disruptive and potentially hazardous."
>
> "factual disputes preclude the Court from determining, at summary judgment, whether Sgt. Pope's orders were lawful or unlawful."

*Id.* at 15, 17-18, 23.

On May 7, 2021, Defendant Pope filed a Motion for Reconsideration in this Court in which he asks the Court to reconsider (1) its ruling on whether his orders were narrowly tailored to serve a significant governmental interest and (2) its ruling on whether Defendant Pope had probable cause to arrest Plaintiff. *See* ECF No. 91 (D. Md. May 7, 2021). The Motion for

Reconsideration attached previously *unsubmitted* video evidence which the defense had produced almost three years earlier in discovery.   Defendant Pope has been in possession of the surveillance video he now attempts to submit since at least February 8, 2018.  ECF No.  76-23, Exhibit U (D.  Md.  December 16, 2020).  On that date, at 11:03 AM Mary Ellen Nardone of the State Attorney's Office requested from Rebecca Labs of the Maryland Capitol Police "all and any of the above that you may have on Kevin and Jeff Hulbert." *Id.*  Ms.  Labs promptly responded to Ms.  Nardone's request at 12:31 PM, providing her with the video.  *Id.*  In addition, the defense produced a viewable copy in discovery to the Plaintiffs long before moving for summary judgment.

Defendant's Motion for Reconsideration improperly attempts to introduce evidence that should have been raised long ago and advances a meritless challenge to this Court's ruling on whether probable cause for Plaintiff's arrest existed.  Using the belatedly submitted and irrelevant surveillance video, Defendant tries to resolve issues that this Court has specifically stated are reserved for jury decision.

Approximately thirteen days after filing his Motion for Reconsideration, just before this opposition was due, Defendant chose to file an interlocutory appeal for review of the Memorandum Opinion and accompanying Order, divesting this court of jurisdiction.  ECF No. 94 (D.  Md.  May 20, 2021).[2]  Futility of Defendant's appeal aside, said appeal caused this court to issue an order to stay this case pending the outcome of the appeal, which has delayed a necessary jury trial.  ECF No.  98 (D.  Md.  June 21, 2021).  The Fourth Circuit has now stayed the appeal and remanded the matter for resolution of the motion to reconsider.

---

[2] Generally, a notice of appeal "divests this Court of its control over those aspects of the case involved in the appeal," unless "the notice of appeal was filed after [a] motion to vacate, alter, or amend the judgment." *Griggs v.  Provident Consumer Disc.  Co.,* 459 U.S.  56 (1982).

The newly submitted video evidence is irrelevant because the appropriateness of an arrest is measured from what the officer knew at the time of the arrest.  This issue was explore din detail during the officer's deposition and it includes no grounds for an arrest.

The newly submitted video evidence is also irrelevant because it does not show either of the brothers who were arrested in the street at all, blocking traffic, or otherwise committing any of the charged conduct.  Therefore, it is irrelevant to the charges against them.  These two men were arrested for crimes the charging officer admits they had not committed and the video now confirms that fact.

The newly submitted video evidence does not justify reconsideration of the Court's prior ruling because even to the extent it helps answer the question of who was in the street and when, it does not resolve the other factual disputes the Court identified in its prior ruling.

Finally, the newly submitted video evidence does not justify reconsideration of the Court's prior ruling because the Court's ruling did not in fact turn on the question of whether anyone entered the street.  This issue was an aside in the Court's analysis and one which would not change the ruling for the reasons demonstrated below.

## II.   <u>STANDARD OF REVIEW</u>

Motions for Reconsideration under Rule 54(b) are often reviewed under the standards applicable to motions under Rules 59(e) or 60(b), since "the Fourth Circuit has not identified the precise standard for resolving such a motion." *Blanch v.  Chubb & Sons, Inc.,* 124 F.Supp.3d 622, 629 (D.  Md.  2015).  Therefore, "[m]ost courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions." *Id.*  Courts only reconsider an interlocutory order when "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Id.*  (citing *Nana-Akua Takyiwaa*

12

*Shalom v. Payless Shoesource Worldwide, Inc.,* 921 F.Supp.2d 470, 480 (D. Md 2013)); *Hill v. Braxton,* 277 F.3d 701, 708 (4th Cir. 2002).

Under established Fourth Circuit precedent, neither Rule 54(b) nor 59(e) should be used to "rehash arguments" that the court has already considered "*or to submit evidence which should have been previously submitted.*" *See In re Pella Corp. Architect and Designer Series Windows Mktg., Sales Practices & Prods. Liabl. Litig.,* 269 F.Supp.3d. 685, 691 (D.S.C. 2017) (emphasis added); *see also, South Carolina v. United States,* 232 F.Supp.3d. 785, 793-94 (D.S.C. 2017) ("[A] motion to reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome.").

Previously unavailable evidence is that which "could not have been timely submitted in the exercise of reasonable diligence." *See Jensen v. Conrad,* 570 F.Supp. 114, 128-29 (D.S.C. 1983) (explaining that "summary judgment will generally not be altered or vacated on the basis of supplemental exhibits or affidavits filed after summary judgment is granted . . . [t]his is particularly true in a case . . . where the party seeking to amend judgment has made absolutely no showing that the additional evidence offered could not have been timely submitted.") (citing *Clarke v. Montgomery Ward & Co.,* 298 F.2d 346 (4ᵗʰ Cir. 1962)).

Under Federal Rule of Civil Procedure 52(a), "[f]indings of fact shall not be set aside unless clearly erroneous." "[I]f substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed." *Ryan v. Thurston,* 347 A.2d 834, 836 (Md. Ct. Spec. App. 1975). In other words, to meet the third circumstance under which this Court may reconsider its decision, Defendant must show that this Court's ruling was not supported by substantial evidence.

Pursuant to Md. Code, Crim. Law § 10-201(c)(3), "[a] person may not willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace." The elements of the crime charged require that the law enforcement order be made to prevent a breach of the peace. *Spry v. State*, 396 Md. 682, 692–93 (2007) (*quoting Drews v. State*, 224 Md. 186, 192 (1961)).

"Probable cause is determined from the totality of the circumstances *known to the officer at the time of the arrest*." *Brown v. Gilmore,* 278 F.3d 362,367 (4th Cir. 2002) (emphasis added). A charge of willful failure to obey a reasonable and lawful order of a law enforcement officer under Md. Crim. Law §10-201 "requires a public disturbance." *Higgin Botham v. Brauer*, 2020 WL 4569520, at *5 (D. Md. August 7, 2020).

## III.   ANALYSIS

### A.   DEFENDANT'S MOTION FAILS TO SHOW THAT A RECONSIDERATION OF THIS COURT'S RULING IS WARRANTED UNDER THE RULE 54 (b) OR 59(e) STANDARD.

Defendant Pope's Motion should be denied because it fails to demonstrate that any of the "narrow circumstances" warranting reconsideration under either rule 54(b) or Rule 59(e) apply to this Court's Opinion and Order. *In re Pella Corp.,* 269 F.Supp.3d. at 691. Sgt. Pope does not specify which of the three narrow circumstances that a court reconsiders its interlocutory orders his Motion for Reconsideration falls under. As Defendant Pope notes in his own Motion for Reconsideration, "the Court generally disfavors motions for reconsideration." *See* ECF No. 91 at 1 (D. Md. May 7, 2021). Nowhere in the Motion does Sgt. Pope contend that there has either been an intervening change in controlling law or that this Court's decision in its Memorandum Opinion was based on clear error or would work manifest injustice. The only remaining circumstance that could possibly warrant Sgt. Pope's Motion for Reconsideration is to present

additional evidence that was not previously available.  In other words, *the sole basis for reconsideration is a video which had been in the possession of the defense for years*, but which the defense failed to properly submit with its summary judgment motion.  Therefore, this surveillance video does not fit the articulated standard for "evidence that was not previously available."

The Court possessed video footage of the incident at the time that it issued its decision. Defendant Pope does not distinguish this new video from the previously submitted video in a meaningful way and in offering it, attempts to resolve a factual question which is reserved for the jury.

Defendant Pope has been afforded ample time and opportunity to submit responses, exhibits, and affidavits before summary judgment was granted.  In the event that Defendant required additional time, he was free to petition the court for an extension.  No such motion was made regarding the newly offered video evidence.  Additionally, Defendant attempts to excuse this late addition of evidence by stating that he "did not anticipate that this would be as significant an issue during briefing of the motion for summary judgment." ECF No. 91 at 2 (D. Md. May 7, 2021).  Aside from this, Defendant offers absolutely no evidence as to why this video could not have been timely submitted.  These are not acceptable grounds on which Defendant should be permitted to submit new evidence at this juncture.

Further, there has been no intervening change in controlling law and this Court's decision was not based on clear error, nor would it work "manifest injustice."  The portions of this Court's summary judgment decision that are challenged by Defendant Pope were not only based on "substantial evidence" as precedence requires, but on Defendant Pope's own sworn testimony.   For instance, after reviewing both parties' testimony and the video evidence

presented, the court concluded that "[n]othing in the video or testimony before the Court
suggests pedestrians' efforts to use the sidewalk were frustrated by the group prior to the
arrests." ECF No. 88 at 17 (D. Md. April 22, 2021).

      This Court's decision is thereby not clearly erroneous because it was based on substantial
testimonial and documentary evidence.  Defendant cannot now argue to the contrary without
properly providing new evidence that could not have been obtained previously through due
diligence.

      It was incumbent upon counsel for Defendant Pope to (1) ensure that this evidence was
converted to an acceptable format for the court and (2) file for leave of court to submit a physical
copy of the evidence, if necessary.  Electronic Case Filing Policies and Procedures Manual at 16,
*available at* https://www.mdd.uscourts.gov/sites/mdd/files/CMECFProceduresManual.pdf.
Defendant Pope clearly failed to take these steps and instead neglected to offer the surveillance
video as evidence.

      Sgt.  Pope does not offer any reason as to why this video could not be submitted to
evidence previously, aside from the fact that "[he] did not anticipate that this would be as
significant an issue during briefing of the motion for summary judgment." ECF No. 91 at 2 (D.
Md.  May 7, 2021).  This is not an acceptable explanation as to why the video was not submitted
prior to summary judgment when Defendant Pope has been in possession of the video since
February 8, 2018.

      Defendant Pope also attempts to argue in his recently-submitted Motion to Suspend
Briefing to the Court of Appeals that the surveillance video submission was delayed due to
"ongoing technical difficulties," yet at the same time states that these difficulties were overcome
by converting the video with a simple screen capture feature.  ECF No. 18 at 2, 4 (4th Cir.  July

16

19, 2021).  Had Defendant Pope properly and diligently attempted to submit all relevant evidence at the appropriate juncture, prior to summary judgment, he would have undoubtedly been able to overcome the cited technical difficulties in the same manner.

In the Motion to Suspend, Defendant Pope seeks to excuse the failure to provide the video earlier by claiming it could not "be converted to a file format that is acceptable to this Court," during the summary judgment stage, so he "proceeded to file the motion for summary judgment without submitting the surveillance footage as an exhibit because other video footage filmed by a member of the media was available and showed the latter part of the incident when police had arrived." *See* ECF No. 18 at 2 (4th Cir. July 19, 2021).

Defendant Pope claims that "[u]ltimately, the Office of the Attorney General's Information Technology Department was able to create a file in a format that is approved by [this Court] by playing the video on the Department's computer and recording the screen with a screen capture feature," but offers no explanation as to why this approach was impossible at the time of summary judgment.  ECF No. 18 at 4 (4th Cir.  July 19, 2021).   Indeed, screen capture technology of this type has been in use by the undersigned for a decade or more.

## B.       THE SURVEILLANCE VIDEO THAT DEFENDANT POPE BELATEDLY SUBMITTED IS IRRELEVANT.

Defendant Pope offers surveillance footage of Plaintiff's demonstration, that purports to show "that [the demonstrators] regularly walked across the streets with their signs before the arrests." ECF No. 91 at 2 (D. Md. May 7, 2021).

Counsel for plaintiffs have reviewed the surveillance video in question.  This video is not materially distinguishable from video evidence that was previously presented.   The video does *not* "[show] that the group regularly walked across the streets with their signs before the arrests." *Id.*  Instead, the video shows that *two* demonstrators used the *crosswalks* to lawfully and safely

17

periodically cross the street.  At no point does the video show that the demonstrators created a safety issue that called for police involvement.

On the contrary, the video shows that _the demonstrators never crossed the streets in a group_, as the defense suggests, and that each time one of the demonstrators did cross the street, they did so carefully and lawfully by looking out for traffic and using the crosswalks.

The video also shows that pedestrians were able to regularly use the crosswalks without impediment, which is also a factual finding supported by Sgt.  Pope's own deposition testimony. ECF No. 88 at 15.  (D. Md. April 22, 2021).

The video also shows a pedestrian – _not associated with the picketers_ – who improperly crosses the street at time mark 7:24:22, causing two cars to stop and let the pedestrian pass.[3] Critically, however, this information was not known to Pope when he charged the Plaintiffs.

At no point in the video do any of the demonstrators improperly enter the street prior to Pope's unlawful orders.   After police arrive and after the orders, one individual who was filming the arrests steps into the street without obstructing traffic.

_Critically_, neither of the Hulbert brothers ever crossed the street or entered the crosswalk or roadway at any time in the video, and it was not one of the Hulbert brothers who briefly stepped into the street after the orders were given and police were on the scene.   The video depicts the Hulberts arriving at the scene and staying on the Lawyer's Mall side of the street

---

[3] The video also shows approximately five police vehicles arriving at the scene to arrest two people.  At only one point in the video, after the arrival of the police vehicles, is one demonstrator seen standing in the street next to a police vehicle to gain a vantage point for filming the arrests.  It is likely that, as this Court suggested, "the police involvement caused the situation to become more disruptive and potentially hazardous." ECF No.  88 at 17-18 (D.  Md. April 22, 2021).

where the picketing primarily took place.   After their arrival, the Hulberts never left the sidewalk until they were arrested.

 Based on the surveillance video, no safety issue or disturbance of the peace existed that warranted the arrests of either of the Hulbert brothers.  Defendant Pope admitted that based on the information known to him at the time of the Hulberts' arrests, he did not see any public disturbance that warranted the arrests.

Similarly, he did not see the surveillance video on the night of the arrest, and even if he had, there were still no grounds for the arrests.  First, the Hulberts were arrested despite the fact that they never left the sidewalk at all.

Second, the Picketers crossed safely and lawfully each and every time that they crossed the street, using the crosswalks.  It is not a crime to either cross the street or use crosswalks and even if it were, the Hulberts are not seen doing so in the surveillance video.

Third, the order to move from the sidewalk had no logical nexus to any allegation that the Picketers were crossing the road or creating a safety hazard.  Even if the Hulberts had been in the road, the appropriate order would have been to move out of the road, _not_ off the sidewalk.  For all these reasons, nothing in the video is relevant to the decision to issue the charges even if Defendant Pope had seen the video on the night of the Hulberts' arrests, which again, he had not.

**C.      THIS COURT SHOULD NOT RECONSIDER ITS RULING ON WHETHER DEFENDANT POPE HAD PROBABLE CAUSE TO ARREST.**

The Hulberts were initially arrested under a charge of "willfully [failing] to obey a reasonable and lawful order of a law enforcement officer to . . .  prevent a disturbance of the public peace."  Since a charge of willful failure to obey a reasonable and lawful order of a law enforcement officer under Md.  Crim.  Law §10-201 requires a public disturbance and an officer

generally determines probable cause from the totality of the circumstances known to the officer at the time of arrest, Sgt. Pope is required to articulate the public disturbance that the Hulberts were causing at the time of their arrests.

To issue a valid criminal citation for disorderly conduct due to a failure to obey an order of law enforcement under the circumstances present in this case, Officer Pope would need to demonstrate: (1) that the individual's conduct was interfering with the public order or leading to a breach of the peace; and (2) that the officer directed the individual to move on in order to prevent a breach of the peace.

Further, orders given to the Hulberts must be justified *by the actions of the Hulberts* in order for the order to them to be lawful. Nothing the Hulberts did justified an order to them to move. The fact that two other individuals lawfully crossed the street at various points in the surveillance video does not justify *the Hulberts'* arrests. Neither of the Hulbert brothers ever entered the street or the crosswalks, which the surveillance video confirms.

According to Sgt. Pope's deposition, "he did not see the group blocking traffic or creating any unsafe conditions and that, prior to the arrival of multiple police officers and police vehicles, people could 'come and go freely' and there was 'no disturbance or disruption of the normal business in the area.'" ECF No. 88 at 15 (D. Md. April 22, 2021) (citing ECF 84-2 at 80-83 (D. Md. February 11, 2021)); *see also* ECF 76-1 at 31 (D. Md. December 16, 2020) (acknowledging that "Sgt. Pope did not observe the presence of any immediate safety hazards."). Defendant's own testimony therefore unequivocally establishes that there was no public disturbance at the time of the Hulberts' arrests based on his assessment of the totality of the circumstances that warranted his order to move.

The surveillance video submitted in conjunction with the Motion for Reconsideration similarly supports the absence of a public disturbance at the time of Appellees' arrests.

Defendant Pope did not witness any conduct from either Kevin or Jeff Hulbert that could possibly constitute disorderly conduct pursuant to Md. Code, Crim. Law § 10-201(c)(3). Thus, the original criminal citations issued against the Hulberts on the evening of February 5, 2018 were unsupported by probable cause and unconstitutional. The order to move and these citations also violated the Hulberts' First Amendment rights.

Moreover, even if it was the Hulberts who crossed the street safely in the crosswalk, doing so is perfectly lawful and does not provide grounds to order one to move.

In addition, the order to move was *not* to stay out of the crosswalk, but instead to leave a public sidewalk. Such an order is not justified by the conduct alleged. In other words, even if the persons crossing the street had caused a problem (they did not), the relevant order would have been not to cross the street. Having someone leave a public sidewalk because they earlier crossed a street is simply illogical and, therefore, an unlawful order.

Finally, there is nothing disorderly shown on the video (*and the defense does not even contend otherwise*). Even if the Hulberts were the ones crossing the street (*they were not*); even if the crossing was unlawful (*it was not*); even if ordering them off of a public sidewalk was rationally related to crossing the street (*it was not*), there was still no disturbance of the peace – as Officer Pope himself has admitted.

Given the foregoing, the elements of disorderly conduct were not satisfied as to either Kevin Hulbert or Jeff Hulbert's arrests and Defendant Pope did not have probable cause to arrest them for willful failure to obey a lawful order. Defendant Pope had no possible justification to order the Hulberts to move on from the area, as a police officer is only permitted to do so in a

situation like this one when the individuals are a danger to public peace.  As Defendant Pope

admits that there was no obstruction of travel, no unsafe conditions, and no fear for anyone's

safety, Defendant Pope did not issue the order to promote public safety.

Further, this Court has recognized the ultimate irrelevance of the question of whether

someone crossed the street:

> Nothing in the video or testimony before the Court suggests pedestrians' efforts to
> use the sidewalk were frustrated by the group prior to the arrests.   Still,
> Defendants argue that even though the demonstration was not immediately
> unsafe, an emerging threat to safety justified Sgt.  Pope's actions.  Specifically,
> Defendants argue that because "[p]edestrians had been hit by cars at this
> intersection within the prior year, safety issues were reasonably anticipated in the
> area." ECF 76-1 at 33 (citation omitted).  They also note that there have been
> dozens of unrelated complaints to the police about cars not stopping for
> pedestrians.  ECF 176-7 at 109.  However, unlike in *Ross*, where there was a clear
> link between a past incident with a circus protestor and the plaintiff's conduct,
> there is no evidence that the circumstances surrounding these vehicle accidents or
> complaints had anything in common with the Patriot Picket's February 5
> demonstration.  There is nothing suggesting the safety threats had occurred in
> conjunction with any kind of First Amendment activity, and the accidents appear
> to have occurred during daylight hours in June, not, as here, when the Maryland
> Legislature was in session.  *See* ECF 76-20 (reporting that pedestrians "were
> struck by passing vehicles on June 6, 2017 at 3:08 pm and June 21, 2017 at 6:48
> pm").

*See* ECF No.  88 at 17 (D.  Md.  April 22, 2021).

Even setting aside the irrelevance of the issue of whether anyone stepped into the street,

the Motion to Reconsider is doomed to failure because there are other factual disputes.   These

include, "whether a legitimate government interest was served by the police action;" and

"whether any real, non-conjectural safety issue was aided by Sgt.  Pope's actions, or whether the

police involvement caused the situation to become more disruptive and potentially hazardous."

ECF No.  88 at 15, 17-18 (D.  Md.  April 22, 2021).

In the Motion for Reconsideration, Defendant Pope submits that "even if [he] was

mistaken about the lawfulness of the order, he still had probable cause to arrest." ECF No.  91 at

5 (D. Md. May 7, 2021).  This argument is nearly identical to the Defense's previous "claim that there is no causal connection between Plaintiffs' speech and the arrest because the arrest was based on probable cause that the Hulberts disobeyed Sgt.  Pope's lawful orders," making it a rehashed argument.  ECF No. 88 at 23 (D.  Md. April 22, 2021).

The very question at hand that would dispose of the outstanding issues that this Court denied summary judgment on is whether Defendant Pope's orders on February 5, 2018 were lawful and thereby constitutionally sound.  The fact that "Sgt.  Pope believed in good faith that he had given a lawful order" does not yield a conclusion that his orders were lawful.  ECF No. 91 at 5 (D. Md. May 7, 2021).  Similarly, the fact that "an officer can arrest a person subjectively believing that the individual had committed one offense when the individual had committed a completely different offense," does not allow an officer to give orders or perform arrests that "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See* ECF No.  91 at 5 (D. Md. May 7, 2021); *see also* ECF No.  88 at 9 (D. Md. April 22, 2021) (citing *White v.  Pauly* 137 S. Ct. 548, 551 (2017)).  This is especially true where Defendant Pope has explicitly testified that he did not see the Hulberts creating a disturbance of any kind or engaging in any kind of criminal activity.  Once again, the provided surveillance video also confirms this.

First Amendment rights of assembly and speech are undoubtedly "clearly established." Defendant Pope offers no argument or new evidence in favor of the lawfulness or constitutionality of his orders, which is the primary question to be resolved.

Additionally, Defendant submits that "several officers and at least one prosecutor" agreed that a criminal offense occurred.  ECF No.  91 at 8 (D. Md. May 7, 2021).  Again, this does not provide adequate support for the constitutionality of Defendant Pope's actions.

Defense also posits that "[o]fficers are protected from claims for constitutional violations" for "reasonable mistakes as to the legality of their actions." *Id.* (citing *Merchant v. Bauer,* 677 F.3d 656, 661 (4th Cir. 2012)).  Defendant's argument would thereby suggest that even as a trained officer of the law, he was ignorant to the clearly established First Amendment rights of assembly and speech when he mistakenly gave potentially unconstitutional orders.  This Court clearly articulated the applicable standard under *White v. Pauly* which states that, "[q]ualified immunity is properly invoked where an officer's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ECF No. 88 at 9 (citing *White v. Pauly* 137 S. Ct. 548, 551 (2017)).

Finally, this Court has already concluded that "[s]ince Jeff Hulbert has made an initial showing that his rights were violated, the government has the burden of proving the constitutionality of its restriction." *Id.* at 10 (citing *Reynolds v. Middleton,* 779 F.3d 222, 226 (4th Cir. 2015)).  None of the arguments offered in the Motion for Reconsideration satisfy this burden.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for Reconsideration.

Respectfully submitted,

HANSEL LAW, P.C.

_____/s/ Cary J. Hansel_____
Cary J. Hansel
cary@hansellaw.com
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
*Counsel for Plaintiff*

24

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of September, 2021, the foregoing motion was

filed with the Court's CM/ECF system which shall effect service on all parties so entitled.

_____/s/ Cary J. Hansel_____

Cary J.  Hansel